LENA NICHITTA, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

First Department, April 27, 1928.

**Municipal corporations — negligence — plaintiff was injured by ambulance used in connection with municipal hospital — ambulance was conveying nurses to clinic — defendant was engaged in governmental work and is not liable for injuries.**

The plaintiff was struck by an ambulance owned by the defendant city and used in connection with a municipal hospital. At the time of the accident the ambulance was being used to convey a class of nurses to a clinic, at which they were to receive instruction. The hospital and ambulance were under the jurisdiction of the department of public welfare and the hospital was conducted as a charitable institution. Since the automobile was being used by the defendant in the performance of a governmental function, the city is not liable for the negligence, if any, of the driver of the automobile.

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 16th day of April, 1927.

*Henry J. Shields* of counsel [*J. Joseph Lilly* with him on the brief; *George P. Nicholson, Corporation Counsel*], for the appellant.

*Edwin J. Lukas* of counsel [*Aaron Lipper* with him on the brief; *Santangelo & Lukas*, attorneys], for the respondent.

MARTIN, J.   On April 6, 1923, the plaintiff was injured while returning to her home on Staten Island, after a visit in Manhattan. She left the ferry at St. George and boarded a trolley car from which she alighted on Richmond turnpike at the corner of Ontario avenue, at which time she says she saw a bus approaching about three or four blocks away.   The road at this point consists of a paved strip in the center with a single line trolley on each side. The plaintiff testified that she crossed the near side rails, the paved center strip and the second set of rails, and reached the footpath on the side opposite that on which she had alighted from the car; that after she had crossed the roadway and was on the footpath she was struck by the bus which she had seen on the roadway.

The chauffeur or operator of the bus testified that the plaintiff stepped into the pathway of his automobile from behind the trolley car from which she had alighted; that he turned to his left to avoid hitting her; she stood still for a second, then stepped backward a few steps and as he turned to his right she ran in the same direction he had turned, so that the right fender of the bus struck her on the right thigh.   She was just on the edge of the concrete, near the car track on which the car was being operated from which she had just alighted.   The presence of the hospital automobile at that place was then explained.

Miss Christine Schaefer, an occupant of the automobile, testified that she was a registered nurse in the employ of the department of public welfare; that she was conducting a class for nurses who were actually on duty in the wards of the Sea View Hospital, where they were receiving a four months' course in post graduate work for the nursing and care of tubercular patients.   The class was being driven to a department of health tuberculosis clinic to study the metropolitan method of record keeping and clinic work.   The bus in which they were traveling was an ambulance, generally used to convey patients to and from the hospital.   The witness did not see the accident, her mind being on the lecture she intended to give at the clinic.   She saw the plaintiff on the roadway, with her feet lying between the tracks.   The automobile was on the concrete and not on the side of the roadway.

On the record thus made, the defendant moved to dismiss the complaint upon the ground that the operation of a hospital and an automobile in connection therewith is an exercise of a State function cast upon the municipality by law for the benefit of the State, in the exercise of which power the defendant may not be held liable for negligence; also on the ground that the plaintiff had not proved any cause of action and that she had not shown herself

to be free from contributory negligence. The trial justice denied all the motions and submitted the issues to the jury which found for the plaintiff.

The principal question here involved is whether a department of the city government, known as the department of public welfare, in conducting a charitable hospital which is purely a governmental function, may make the city of New York liable by reason of the fact that the chauffeur of its ambulance or automobile was negligent.

The question whether the vehicle was an ambulance or an automobile used for the purpose of conveying nurses from one point to another in the performance of their work is wholly immaterial, for the reason that in any event the vehicle was being used to perform the work of the institution.

In *Maxmilian* v. *Mayor* (62 N. Y. 160) the court said: " There are two kinds of duties which are imposed upon a municipal corporation: One is of that kind which arises from the grant of a special power, in the exercise of which the municipality is as a legal individual; the other is of that kind which arises, or is implied, from the use of political rights under the general law, in the exercise of which it is as a sovereign. The former power is private, and is used for private purposes; the latter is public and is used for public purposes."

The vehicle in question was being used solely for the purpose of promoting the public welfare, not for a private enterprise, nor for gain or profit. It was in the service of the hospital, aiding nurses, who were being educated in hospital work to reach certain centers to obtain knowledge so that they might be better able to minister to the sick, combat the ravages of tuberculosis and alleviate the suffering of humanity.

The vehicle was being employed in a legitimate phase of hospital work, since the training of nurses forms a part of the work of all hospitals.

In 13 Ruling Case Law (p. 941, title, " Hospitals," § 4) we find the following: " They [hospitals] are generally governed by a board of trustees or board of regents and the work of the institution is generally carried on by a superintendent and staff of physicians and surgeons, selected by the board, who frequently perform their services gratuitously, assisted by a corps of undergraduate medical students, commonly called internes, and apprentice nurses, who render their services for a nominal compensation in consideration of the experience and training received."

Although it is contended by counsel that the city of New York is liable, it is frankly admitted that the city is not liable if the vehicle was being used for a governmental purpose. We find

the following in respondent's brief: " Counsel recognizes that the city of New York is not liable for the acts of its employees while engaged in a governmental function.   We agree with the doctrine set forth in *Maxmilian* v. *The Mayor*, 62 N. Y. 160, and all the other authorities cited by learned counsel for the appellant   *   *   *, all of which hold that the city of New York is not liable while acting in a governmental or public capacity."

The contention of respondent, however, is that the city of New York in the operation of the automobile or ambulance was not exercising a governmental function at the time of the accident. We are unable to agree with that contention.   The city of New York was promoting the welfare of the public by training nurses to minister to the needs of tuberculosis patients in the institution known as the Sea View Hospital, a free hospital for the treatment and care of such patients.   The conveyance was being used solely for the work of the hospital, a part of which was the training of these nurses to better serve the needs of the institution and the requirements of their calling.

A negligent act by a servant of a charitable institution will not, as a general rule, render the city liable.

Dillon on Municipal Corporations (Vol. 1 [5th ed.], § 109, p. 181) writing on the subject says: " Public and Private or Proprietary Rights distinguished.   It assists to an understanding of the extent of legislative power over municipal corporations proper (incorporated towns and cities) to observe that these, as ordinarily constituted, possess according to the adjudications a double character: the one governmental, legislative, or public; the other, in a sense, proprietary or private.   The distinction between these, though sometimes, indeed very often, difficult to trace, is highly important, and is frequently referred to, particularly in the cases relating to the property and to the implied or common law liability of municipal corporations for the negligence of their servants, agents, or officers in the execution of corporate duties and powers.   On this distinction, indeed, rests the doctrine of such implied liability. In its governmental or public character, the corporation is made, by the State, one of its instruments, or the local depositary of certain limited and prescribed political powers, to be exercised for the public good on behalf of the State rather than for itself.   In this respect it is assimilated, in its nature and functions, to a county corporation, which, as we have seen, is purely part of the governmental machinery of the sovereignty which creates it.   Over all its civil, political, or governmental powers, the authority of the Legislature is, in the nature of things, supreme and without limitation, unless the limitation is found in the Constitution of the particular

State. But in its proprietary or private character, the theory is that the powers are supposed not to be conferred, primarily or chiefly, from considerations connected with the government of the State at large, but for the private advantage of the compact community which is incorporated as a distinct legal personality or corporate individual; and as to such powers, and to property acquired thereunder, and contracts made with reference thereto, the corporation is to be regarded *quo ad hoc* as a private corporation, or at least not public in the sense that the power of the Legislature over it or the rights represented by it, is omnipotent."

In *Springfield Fire & Marine Insurance Co.* v. *Village of Keeseville* (148 N. Y. 46) the court pointed out the difference between public and private powers, and said: " The distinction between the public and private powers conferred upon municipal corporations, although the line of demarkation at times may be difficult to ascertain, is generally clear enough. It has been frequently the subject of judicial discussion and, among the numerous cases, it is sufficient to refer to *Bailey* v. *The Mayor* (3 Hill, 531); *Lloyd* v. *The Mayor* (5 N. Y. 369) and *Maxmilian* v. *The Mayor* (62 id. 160). The opinion in *Darlington* v. *The Mayor* (31 N. Y. 164) is also instructive upon the subject. When we find that the power conferred has relation to public purposes and is for the public good, it is to be classified as governmental in its nature and it appertains to the corporation in its political character. But when it relates to the accomplishment of private corporate purposes, in which the public is only indirectly concerned, it is private in its nature and the municipal corporation, in respect to its exercise, is regarded as a legal individual. In the former case, the corporation is exempt from all liability, whether for non-user or misuser; while in the latter case, it may be held to that degree of responsibility which would attach to an ordinary private corporation. Then, the investiture of municipal corporations by the Legislature with administrative powers may be of two kinds. It may confer powers and enjoin their performance upon the corporation as a duty; or it may create new powers to be exercised as governmental adjuncts and make their assumption optional with the corporation. Where a duty specifically enjoined upon the corporation as such has been wholly neglected by its agents and an injury to an individual arises in consequence of the neglect, the corporation will be held responsible. (*Mayor* v. *Furze*, 3 Hill, 612, 619.) So, in *McCarthy* v. *Syracuse* (46 N. Y. 194), it was held that where a duty of a ministerial character is imposed by law upon the corporation, a negligent omission to perform that duty creates a liability for damages sustained."

In *McKay* v. *City of Buffalo* (9 Hun, 401) a very instructive

discussion of the subject will be found: "There is obviously a difficulty in the practical application of the distinction between those acts and omissions for which the municipality may be liable, on the ground that the act or omission is that of its servants or agents, as attempted to be expressed by Mr. Dillon, and those for which it is not liable; and yet that there is a distinction between those acts or omissions of certain classes of officers who are appointed and controlled by a municipal corporation, and for which the municipality is liable in damages, and those for which no such liability can be alleged, is obvious to the common understanding. The attempt to hold a municipal corporation responsible for the shortcomings or negligent performance of their duties by the policemen of a city, is denied by the common judgment of men, without, perhaps, the ability to put into clear language the grounds upon which the case is to be distinguished from those, in which it is generally conceded that the municipality is responsible for the due and proper performance of the duty devolved upon the agent. This difficulty has been presented in various judicial examinations of the subject, where the decision has been adverse to the liability of the city, and yet the attempt to express in precise language the difference between the cases in which the maxim *respondeat superior* applies and cases to which it has no application, is not altogether satisfactory."

We are of the opinion that the city of New York is not liable for the negligence of the driver of the automobile or ambulance, which the plaintiff says struck and injured her. At the time of the accident he was performing a duty imposed by law upon the municipality for the welfare of the people of the State and in furtherance of the charitable purpose of the hospital established and maintained to render service to the public.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

DOWLING, P. J., MERRELL, O'MALLEY and PROSKAUER, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.