REESE A. BUSH, as Administrator, etc., of LEILA V. BUSH, Deceased, Respondent, *v.* THE BOARD OF MANAGERS OF THE BINGHAMTON CITY HOSPITAL, Appellant, Impleaded with GEORGE S. LAPE, Defendant.

Third Department, July 2, 1937.

*Robert J. Ryan, Corporation Counsel* [*David F. Lee* of counsel], for the appellant.

*Ralph L. Emmons* [*A. E. Gold* of counsel], for the respondent.

RHODES, J. The action is in negligence; at the close of the evidence with the consent of plaintiff, the complaint was dismissed as against the defendant Lape.

Decedent, plaintiff's wife, with her infant child was suffering from measles; they were sent to the Binghamton City Hospital by their attending physician, received there, as paying patients, June 19, 1926, and were placed in a room in a building used by said hospital for the treatment of communicable diseases.

It is plaintiff's claim that through the negligence of said hospital authorities his wife contracted diphtheria from the effects of which she died on July 6, 1926. The plaintiff alleges that said defendant was negligent in choosing its physicians, nurses and employees and in the maintenance and operation of said hospital and in the treatment of patients suffering from communicable diseases; in failing to provide suitable facilities and appliances; in failing to provide and maintain a proper system for such treatment and in placing said decedent in such close proximity to patients suffering from diphtheria that she was exposed thereto.

The defendant board of managers was incorporated by chapter 135 of the Laws of 1904; the members of the board are appointed by the mayor of the city, who is *ex officio* a member. They are

constituted a body corporate, may sue and be sued, receive and hold for the use of the City Hospital real and personal property and have the custody and control of all the property held and owned by said city for hospital purposes. It is conceded that the hospital is an eleemosynary institution.

At the time decedent was received into the hospital it was being remodeled; the building in which deceased was placed, which was then being used as an isolation building, and which was on the same street as the hospital and near thereto, had formerly been used as a nurses' home for said hospital, it originally having been a dwelling house. There were three or four rooms on the first floor and three or four rooms on the second floor. The room in front on the second floor was for the treatment of patients suffering from measles and deceased and her baby were placed in this room. Next toward the rear was another room separated by a partition with an arched opening having no door, in which latter room were placed patients suffering from scarlet fever. Next to the rear were two rooms used for the treatment of diphtheria patients, said rooms being separated from those in front by a partition and door. Access to the diphtheria rooms could be had directly by an outside stairway leading from the ground level, which stairway was usually used by those going up to the diphtheria rooms.

Before the building was rented for use of the hospital it was inspected by the city health officer, Dr. Chalmers J. Longstreet, and the deputy health officer, the defendant Dr. George S. Lape, and by Dr. John A. Conway, who was District State Health Officer of the State Health Department, by Dr. Frank M. Dyer, who was a member of the board of managers, and by Superintendent Jerome F. Peck, and it was upon the recommendation of these physicians and health officials that the superintendent rented the building and placed it in use for isolation purposes. All testified that it was suitable, adequate and safe for the purposes and in the manner used; that the means of sterilization and disinfecting employed were safe and adequate and that the rooms and equipment were surgically clean.

Evidence for the plaintiff comprises that of Hannah F. Hayes, who for sixteen years was inspector, Medical Division, State Department of Social Welfare, she being a graduate nurse. Her inspection was made on the 23d day of July, 1926, several days after the death of decedent, and the second floor was not in use when she visited it. As a result of her inspection she reported that there was a lack of cleanliness as to the walls, window frames and beds on the first floor, but was not able to say whether or not they were sterile and surgically clean. She also testified that the equip-

ment and number of nurses were not "standard," as compared with the general prevailing standards in this State.

Plaintiff also produced as a witness a man who was employed as porter or orderly, who testified as to his duties as to mopping floors, cleaning windows and washing dishes; he also made up and carried trays and performed similar work, being the only porter or orderly in the building at the time. His superior was the supervisor in charge, Miss Rita Ford who, at the time of trial had married and whose name was then Rita Ford Heuner.

The only other witness for plaintiff who gave testimony requiring discussion was Dr. Edward Ross Proctor, who had been plaintiff's family physician, and who testified that, in his opinion, the equipment and conditions were below the reasonable standards which prevailed in 1926, but that they were the standard for the city of Binghamton, because it was the only place in the city of Binghamton for such treatment; that if there were surgical cleanliness, the presence of dirt having no germs, would not spread disease, but he did not know the conditions that prevailed in the building; that equipment might look dirty but be surgically clean. He did not treat deceased after she was received at the hospital, but at the request of plaintiff he obtained permission from Dr. Lape and visited her, at which time he examined the decedent's hospital case record. It contained a report of the pathological laboratory showing diphtheria germs from the nasal culture, no diphtheria germ from the throat culture. The patient's case record showed that diphtheria antitoxin had been administered. Upon the said laboratory tests and the statement that antitoxin had been given, he based his opinion that deceased had contracted diphtheria and that she died therefrom. At the time he had been in practice a year after his interneship, but was not a specialist in communicable diseases.

It was a rule of the hospital that any patient who was admitted suffering from a communicable disease was placed under the charge of said health officers, irrespective of whether they had previously been under the care of other physicians.

The statement of the attending physicians is that when deceased was admitted to the hospital she was suffering from measles and valvular heart murmurs, the heart being enlarged and the heart condition being very serious; that shortly after she arrived she was developing bronchial pneumonia, that bronchitis is one of the symptoms of measles, and apt to develop into pneumonia; that she developed a discharging abscess in the left middle ear, and Dr. George Bogt, an ear specialist, was called and treated the ear.

The testimony of these witnesses is to the effect that the primary condition of the patient was measles, which caused the middle ear abscess or infection from which arose an absorption into the blood stream causing septicemia and endocarditis, which caused her death, these conditions being complicated with bronchitis and bronchial pneumonia.

It appears that the antitoxin administered to the patient as a routine precaution produced no reaction, thus indicating that she did not have diphtheria. All of the attending physicians swore that she did not have diphtheria.

It is undisputed that the specimens from the mucous of the nose and throat were smears; that from a smear and a microscopic inspection in a slide it is practically impossible to tell whether the germ is a diphtheria germ or a pseudodiphtheria germ, and that it is impossible from such a report to obtain sufficient evidence upon which to base a proper diagnosis concerning diphtheria; that many persons are so-called diphtheria carriers, having diphtheria germs in the nasal passages, although they may not have the disease.

Plaintiff and deceased were married in 1920. At the time of her death she was twenty-eight years old, the mother of three boys, one aged five years, one three and one aged three months. Plaintiff testified that she was about five feet eight inches in height, weighed about 135 pounds and that her health was good, that she had done all the housework in their one-family seven-room house, and that the previous summer had worked in the diet kitchen in said hospital.

The foregoing is a synopsis of most of the salient facts.

The appellant attacks the verdict and judgment upon several grounds.

A point is made that the action may not be maintained for the reason that no claim was filed as required by section 244 of the Second Class Cities Law. That section, however, refers to an action brought against the city, which is not the circumstance here.

A more interesting question is raised to the effect that the defendant was performing a governmental function and, therefore, not liable for the acts complained of. The protection of health is a governmental function. (*Augustine* v. *Town of Brant*, 249 N. Y. 198; *Maxmilian* v. *Mayor*, 62 id. 160.)

In *Nichitta* v. *City of New York* (223 App. Div. 428; affd., 250 N. Y. 530) plaintiff was struck by an ambulance owned by the city and used in connection with a municipal hospital. It was held that the ambulance was an incident of the hospital work of the city, being used for the purpose of promoting the public welfare. Upon this ground, plaintiff was not permitted to recover.

It is to be noted in that case, however, the action was against the city. Here the action is against an agency of the city, and in the case of *Murtha* v. *N. Y. H. M. Col. & Flower Hospital* (228 N. Y. 183) it was held that a hospital furnishing service to the city was not relieved from liability, though it was doing work of the sovereign power. The defendant at bar may not, therefore, escape liability upon this ground.

Appellant next insists that even if it was performing a governmental function it was a charitable institution and, therefore, not liable. That doctrine which for years has been a moot question, has recently been settled by the case of *Sheehan* v. *North Country Community Hosp.* (273 N. Y. 163) where it was held that such a hospital is not exempt from liability on this ground.

The next point is vital. Appellant claims that the defendant was not negligent. It is not disputed that the defendant is not liable for the negligence of its physicians and nurses in the treatment of patients. (*Schloendorff* v. *N. Y. Hosp.*, 211 N. Y. 125.)

Decedent, when she became a patient, immediately came in charge of the health officers of the city, qualified physicians, and her care was under the charge of the supervisor, a nurse with special training, Rita Ford (Heuner).

No question is raised as to the competence, skill or qualifications of any of the physicians or nurses in attendance. They had entire charge and if there was any negligence, necessarily it was theirs.

While plaintiff's witnesses asserted that the equipment was not " standard," there is no testimony disputing the evidence of defendant's witnesses that the equipment and methods employed were safe and suitable. For this reason and upon the facts presented, the verdict was erroneous and the judgment should not stand.

The appellant objects further, that there is no adequate proof that decedent contracted diphtheria or that it caused her death, and that the verdict is against the weight of evidence.

The undisputed proof is that when antitoxin was administered decedent did not react thereto, thus clearly indicating that she was not suffering from diphtheria. The proof is also undisputed that the laboratory test could not disclose microscopically whether the germ culture was that of diphtheria or pseudodiphtheria. Furthermore, without dispute, it appears that many persons are carriers of diphtheria germs and that the presence of such germs in a culture does not establish that the partient is suffering from diphtheria.

In the face of these facts and the positive testimony of all the physicians for the defendant, who swore that she did not have this disease, the testimony of Dr. Proctor for the plaintiff has too

little support to warrant a finding that decedent contracted diphtheria and died from the effects thereof.

The judgment should be reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.

CRAPSER and HEFFERNAN, JJ., concur; HILL, P. J., and BLISS, J., dissent.

Judgment reversed on the law and facts, and new trial granted, with costs to the appellant to abide the event.