ELIZABETH ROEWEKAMP, Respondent, v. NEW YORK POST-GRADUATE MEDICAL SCHOOL AND HOSPITAL, Appellant.— Defendant, a charitable institution, maintains a hospital and post-graduate school. Plaintiff, a charity patient in defendant's hospital, sues to recover damages for injuries, alleging that defendant permitted an incompetent doctor to operate upon her and that defendant knew or should have known of his incompetency. On a prior appeal we held that the action is governed by the three-year Statute of Limitations (Civ. Prac. Act, § 49),

applicable to negligence actions generally. (*Roewekamp* v. *New York Post-Graduate Medical School & Hospital*, 254 App. Div. 265.) The jury rendered a verdict in favor of plaintiff. Defendant appeals from the judgment and from the order denying its motions for a directed verdict, to set aside the verdict and to dismiss the complaint. Order and judgment reversed on the law, with costs, and complaint dismissed, with costs. While plaintiff's proof was sufficient to show that the doctor who operated upon her was negligent and the injuries she suffered were the result of his negligence, plaintiff failed to establish that at the time defendant assigned the doctor to perform the operation it knew or ought to have known he was incompetent. On the other hand, the uncontradicted proof shows that defendant was not negligent in assigning the doctor to perform the operation. The doctor was licensed to practice medicine in 1910, and prior to operating upon plaintiff had eighteen years' experience in general practice both in New York and Ohio, during which time he had performed approximately fifty tonsillectomies. On February 1, 1928, he entered defendant's hospital to take an eight months' post-graduate course in otolaryngology. During the first four months the course consisted of theoretical study, attending lectures, clinic work, examination of patients and diagnosis. Thereafter he was permitted to do operative work under the supervision of skilled and experienced physicians. From June 2, 1928, to August 27, 1928, when he operated on plaintiff, the doctor had performed fifty-three tonsillectomies in addition to doing other operative work. The fact that he might have shown himself to be negligent in operating upon plaintiff is no proof of defendant's knowledge of the doctor's general incompetency prior to the time he was assigned to perform such operation. (*Baulec* v. *New York & Harlem R. R. Co.*, 59 N. Y. 356, 359; *Cameron* v. *N. Y, C. & H. R. R. R. Co.*, 145 id. 400, 407; *Park* v. *N. Y. Central & H. R. R. R, Co.*, 155 id. 215, 219; *Andrews* v. *Reiners*, 111 App. Div. 435; *Ward* v. *St. Vincent's Hospital*, 78 id. 317.) Carswell, Johnston and Close, JJ., concur; Davis, J., with whom Lazansky, P. J., concurs, dissents and votes to affirm, with the following memorandum: The plaintiff went to the defendant hospital for an operation for the removal of her tonsils. She was advised to wait, as her tonsils were inflamed, and told to call again. When she called again her tonsils were still inflamed and not in condition for operation. Nevertheless, she was assigned to one classified as a "student," who performed the operation in a concededly incompetent manner. He not only removed her tonsils, but the uvula and the pillars. The chief of the staff described it as "a butcher's job." The question is, Did the hospital know that this student was incompetent? I regard it as a question of fact. To be sure, the operating "student" had been a physician in general practice. As to his prior experience in tonsil operations, his evidence was contradictory and unsatisfactory. If we accept his final estimate of about fifty tonsil operations (which the jury evidently did not) there is nothing to indicate that they were skillfully and competently performed. In fact, he testified that during the first four months of his course as a student at the hospital he did not consider himself competent to perform an operation; and after that he was permitted to perform minor operations, always under supervision. No adequate inquiry was made by the hospital to ascertain whether he had fundamental qualities of skill; and as his studies and experience proceeded, there seems to have been no definite record of his degree of progress. He was permitted to operate on poor persons to gain experience under supposed supervision. As

to the case of this plaintiff, any proper supervision would have prevented the operation with the tonsils in an inflamed condition. The operation would normally have taken about fifteen minutes, yet it appears that this student took about three hours to perform the operation. Any proper supervision would have prevented the operation under the circumstances; or would have stopped it when it appeared that the operator had demonstrated his unfitness to perform it. The only supervision he had was that of a member of the staff passing in and out of the operating room as he was supervising operations in the other rooms. If his lack of competence was not apparent under these circumstances, then those supervising had their eyes closed. The results of the operation disclosed his original incompetence, which earlier inquiry would have revealed. The executive head of the department and the other doctors as a part of the instructing and operating staff were evidently employed by the defendant and representative of it. Their knowledge of the facts concerning this " student " was the knowledge of the hospital. This knowledge, although a matter of some dispute, presented a question of fact, which was determined in favor of plaintiff. I vote to affirm the judgment.