AMELIA POST and Another, Plaintiffs, *v.* CROWN HEIGHTS HOSPITAL, INC., Defendant.

Supreme Court, Trial Term, Kings County, February 7, 1940.

*Julius Hollander* [*Jacquin Frank* of counsel], for the plaintiffs.

*Caverly, Dimond, Barton & O'Gorman* [*B. G. Barton* of counsel], for the defendant.

HALLINAN, J. The plaintiffs, husband and wife, have brought this action in negligence to recover damages for loss of services and personal injuries respectively in connection with certain post operative treatment which the wife received.

The defendant is a domestic corporation engaged in conducting and maintaining a private hospital in the borough of Brooklyn, city of New York, and for a consideration furnishes services to patrons using its facilities.

On December 19, 1937, plaintiff Amelia Post was admitted to said hospital for the purpose of using its facilities in connection with an appendectomy performed upon her that day by her private doctor. After she was removed from the operating room to the ward to which she had been assigned by an administrative agent of the defendant, a clysis injection was given her by an interne of the hospital, as a result of which it is claimed she suffered the injuries upon which this action is predicated.

The defendant rested at the close of plaintiffs' case, and both parties moved for a directed verdict, thereby leaving to the court the determination of all questions of law and fact. (*Marshall* v. *Prudential Insurance Co. of America*, 255 App. Div. 883.)

According to the testimony, a clysis injection is given usually by an interne to restimulate the system in post operative cases and overcome post operative shock. The injection administered in the instant case, however, was so hot that Mrs. Post was burned and required readmission to the hospital for operative treatment. She remained there for three weeks and continued under treatment for more than two months thereafter.

Upon these facts the plaintiffs contend that the defendant must be held responsible, under the doctrine of *respondeat superior*, for the negligent treatment by its interne, for what he did was part of that after care which defendant agreed to furnish for a good and valuable consideration.

The defendant, on the other hand, urges that the interne was employed only as a doctor acting as an interne upon its professional staff; that in administering the clysis injection he acted in his professional capacity and not, as contended by the plaintiffs, as a mere servant of the hospital, for whose negligence it must be held liable.

There is no basis in this case for holding the defendant liable either upon the ground of the interne's lack of competence, which would have been apparent were there proper supervision (see dissenting opinion, *Roewekamp* v. *New York Post-Graduate M. S. & H.*, 256 App. Div. 957, 959), or negligence in selecting him to serve as an interne (*Hendrickson* v. *Hodkin*, 276 N. Y. 252; *Roewekamp* v. *New York Post-Graduate M. S. & H.*, 254 App. Div. 265, 266). Liability, if any, must be predicated upon the ground that the defendant was the master and the interne was the servant; that

the interne's tortious act was that of the master — *respondeat superior.*

No doubt exists in this and in other jurisdictions " that a hospital, *if public or charitable,* is not liable for the negligence of its surgeons or physicians in the treatment of its patients." (*Hamburger* v. *Cornell University,* 240 N. Y. 328, 335, citing *Phillips* v. *Buffalo General Hospital,* 239 id. 188; *Schloendorff* v. *Society of New York Hospital,* 211 id. 125.) (Italics supplied.)

The rationale for this rule was stated by Judge CARDOZO in the *Hamburger* case (*supra,* at pp. 335, 336), as follows: " The exemption from liability for the acts of surgeons or physicians arises from the *nature of the enterprise or undertaking in which the hospital in engaged,* and the implications of the contract between its patients and itself. ' *Such* a hospital undertakes, not to heal or to attempt to heal through the agency of others, but merely to supply others who will heal or attempt to heal on their own responsibility.' (*Matter of Bernstein* v. *Beth Israel Hosp.,* 236 N. Y. 268, 270.) Physicians and surgeons ' are employed by the hospital to exercise their profession and calling to the best of their abilities according to their discretion ' (*Phillips* v. *Buffalo Gen. Hosp.,* p. 189, *supra*). A patient resorting to the hospital gains the benefit of facilities that would not otherwise be available. If these are not furnished, he has no other remedy for the errors of surgeons or physicians, carefully selected, who have given him treatment in a ward than he would have if the same men upon the recommendation of the hospital had given him treatment at his home. By fair implication he must look to them alone (*Schloendorff* v. *Soc. of N. Y. Hosp., supra,* 130, 131; *Phillips* v. *Buffalo Gen. Hosp., supra; Hillyer* v. *Governors of St. Bartholomew's Hosp.,* 1909, 2 K. B. 820; *Foote* v. *Greenock Hosp.,* 1912, Session Cases, 69 [Scotland]; *Glavin* v. *Rhode Island Hosp.,* 12 R. I. 411, 424; *Basabo* v. *Salvation Army,* 35 R. I. 22; *Runyan* v. *Goodrum,* 147 Ark. 481; cf. cases collated in 23 A. L. R. 907 and 19 Mich. L. Rev. 395)." (Italics supplied.)

It is clear from this language that the rule of non-liability was applied to a hospital " *if public or charitable* " because of " the nature of the enterprise or undertaking in which the hospital is engaged," and when the Court of Appeals in *Matter of Bernstein* v. *Beth Israel Hospital* (236 N. Y. 268, 270) said: " Such a hospital undertakes, not to heal or attempt to heal," etc., they again referred to a public or charitable hospital, for, in the preceding sentence, Judge CARDOZO, in referring to the *Schloendorff* case, said (at p. 270): " We held that a physician, while engaged in the treatment of a patient, does not charge a public hospital with liability for negligence or trespass. Such a hospital undertakes, not to heal," etc.

It is the contention of the defendant that this rule of non-liability is equally applicable to it, notwithstanding that it operated its private hospital as a business " and for a consideration furnished services in connection with the treatment and operation of patrons using the facilities of said hospital." (Paragraph " second " of complaint, admitted by failure to deny.) It argues that the distinction made by the cases between the services rendered by those employed in the administrative branch of the hospital and those employed in a professional way to render the medical or surgical treatment in the hospital, is applicable whether the hospital is charitable or otherwise, and cites *Schloendorff* v. *Society of New York Hospital (supra)*; *Matter of Renouf* v. *New York Central R. R. Co.* (254 N. Y. 349); *Sheehan* v. *North Country Community Hospital* (273 id. 163); *Kamps* v. *Crown Heights Hospital, Inc.* (251 App. Div. 849; affd., 277 N. Y. 602); *Bush* v. *Board of Managers of Binghamton City Hospital* (251 App. Div. 601).

It is clear, from what has already been stated, that while there is general language in the *Schloendorff* case *(supra)* which makes no specific distinction between charitable hospitals as distinguished from those operated for profit, it is evident that what was said there was applied to " a hospital, if public or charitable," and similarly in *Sheehan* v. *North Country Community Hospital (supra)* a charitable hospital corporation was involved, but in the latter case the charitable hospital was held not exempted from the rule of *respondeat superior* where a patient, while in its ambulance, sustained injuries in a collision with another motor vehicle.

*Matter of Renouf* v. *New York Central R. R. Co. (supra)* was a workmen's compensation case, and the question discussed and decided was whether a trained nurse engaged specially by a railroad corporation on a single case to render services to an injured employee in a hospital, under the general direction of the company's physician in charge of the case, was or was not an employee of the company. Judge POUND, writing for the court, concluded his opinion in the following language (at p. 351):

" Although she was, in a general sense, employed by the railroad company, she was not its employee. She occupied the position of an independent contractor following her own calling rather than that of one in the service of the employer. The fact that she was employed by the railroad company rather than the hospital in no wise alters her status.

" A distinction may be drawn between a special nurse and one who places her time and service at the call of her employer without regard to special cases (*Matter of Bernstein* v. *Beth Israel Hospital*, 236 N. Y. 268), but on the facts in this case the claimant is outside

the terms of the Workmen's Compensation Law and her claim must be dismissed."

*Kamps* v. *Crown Heights Hospital, Inc.* (*supra*) was an action to recover damages for negligent treatment of a patient by a nurse. In reversing a judgment for the plaintiff and dismissing the complaint, the Appellate Division advanced two reasons, (1) that the relationship of master and servant did not exist between a hospital and a nurse so as to render the former liable, and (2) that the nurse in question was one specially retained by the patient to render exclusive service and her compensation was paid directly by the patient. The Court of Appeals affirmed on the second ground — that the nurse was employed by the patient and not by the hospital — and pointed out: "The court does not decide any other question upon this record."

*Bush* v. *Board of Managers of Binghamton City Hospital* (*supra*) involved a public hospital, and merely reiterated the rule of non-liability discussed in the *Schloendorff* case (*supra*).

Another case cited by the defendant in support of its position is *Steinhart* v. *Brunswick Home, Inc.* (172 Misc. 787). There, too, a hospital such as the defendant's was involved. In that case plaintiff's intestate was admitted to the defendant's hospital to undergo an operation to be performed by his own doctor. When the operation was about to be performed his doctor asked a nurse in the hospital's employ, who was in charge of the operating room, for a five per cent solution of cocaine, informing her that there was a ten per cent solution in the cabinet. The doctor drew the solution handed by the nurse into a syringe and injected it into the decedent's urethra. Upon detecting an unexpected reaction the doctor asked the nurse to show him the bottle from which the solution had been prepared, and then noticed that it contained sodium hydroxide. He immediately did all he could. The decedent suffered severe burns which developed into strictures, and died fifteen months later from other causes. The action was brought to recover for the pain and suffering of the decedent and for medical expenses incurred in the treatment of the injuries sustained. In setting aside a verdict for the plaintiff and dismissing the complaint, Mr. Justice STEINBRINK did so upon two grounds: (1) " A hospital, whether charitable or private, is immune from liability by reason of the negligence of its doctors or nurses with respect to any matter relating to the patient's medical care and attention," and (2) that the act of the nurse in preparing the solution on the order of the surgeon was not in the discharge of any administrative duty to the hospital (citing the *Schloendorff* case, *supra*, at pp. 132, 133). That case is, however, clearly distinguishable on the facts. There

the nurse was assisting the patient's private surgeon in the performance of an operation, and, as said in *Hillyer* v. *St. Bartholomew's Hospital* ([1909] 2 K. B. 820, 826) with respect to nurses and orderlies: " although they are such servants for general purposes, they are not so for the purposes of operations and examinations by the medical officers. If and so long as they are bound to obey the orders of the defendants, it may well be that they are their servants, but as soon as the door of the theater or operating room has closed on them for the purposes of an operation (in which term I include examination by the surgeon) they cease to be under the orders of the defendants, and are at the disposal and under the sole orders of the operating surgeon until the whole operation has been completely finished; the surgeon is for the time being supreme, and the defendants cannot interfere with or gainsay his orders." The operating surgeon, however, is not responsible for the negligence of house physicians or internes in the after treatment incidental to the operation performed by him. (See note 8, 46 A. L. R. 1457.)

From the foregoing it is apparent that while there are statements in decisions in this State which make no distinction between charitable hospitals and those operated for profit in so far as immunity from liability by reason of the negligence of doctors or nurses with respect to any matter relating to the patient's medical care or attention is concerned, such statements are invariably predicated upon either the *Schloendorff* or the *Renouf* cases (*supra*); the former, however, specifically applied this principle of immunity to a hospital if public or charitable, and the latter involved the application of the Workmen's Compensation Law on an altogether different state of facts.

It would seem that that question is still open in this State, in view of the tenor of the *per curiam* memorandum of the Court of Appeals in *Kamps* v. *Crown Heights Hospital, Inc.* (*supra*), where it affirmed the Appellate Division, this department, in its dismissal of the complaint because the nurse was employed by the patient and not by the hospital, and significantly stated that it did not decide any other question. (See memorandum of the Appellate Division in that case, 251 App. Div. 849.)

The instant case, however, directly involves that question, and the result must depend upon whether the doctrine of immunity is to be applied here.

It may be well to state that neither *Matter of Bernstein* v. *Beth Israel Hospital* (*supra*), strongly relied upon by the plaintiff, nor *Matter of Renouf* (*supra*), cited by the defendant, are of any aid in the case at bar. Both involved the question whether the claimant was an employee within the meaning of the Workmen's Compensa-

tion Law, and the relation between claimant and his employer, and not the relationship which exists between patient and interne or nurse. Nor does this court assume that *Robertson* v. *Charles B. Towns Hospital* (178 App. Div. 285) has been overruled by the *Renouf* case (Cf. *Mieryjeski* v. *Bay Ridge Sanitarium, Inc.*, 237 App. Div. 851), for in *Hendrickson* v. *Hodkin* (*supra*) the Court of Appeals (at p. 258) incorporated in its opinion the following language from page 287 of the *Robertson* case (*supra*): " It is the duty of the owner of a sanatorium conducted for private gain to use reasonable care and diligence not only in treating but in safeguarding a patient, measured by the capacity of the patient to provide for his own safety," citing also *Tulsa Hospital Association* v. *Juby* (73 Okla. 243; 175 P. 519; 22 A. L. R. 333), " where many cases are collated." There, again, the Court of Appeals was silent on the extension of the immunity principle, above set forth, to a profit-making hospital, although that was the basis of the decision of the Appellate Division.

The note in 22 A. L. R. 333, cited by the Court of Appeals in the *Hendrickson* case (*supra*), states (at p. 341): " It is well settled that the owner or proprietor of a private hospital or sanitarium, which is operated for profit and is not a charity, is liable in damages for injuries to patients due to the negligence of nurses or other employees." The New York case cited under that note is *Robertson* v. *Charles B. Towns Hospital* (*supra*). In addition to the language already set forth, the Appellate Division, this department, in that case said (at p. 288): " The jury did not decide who was the master. The corporation operated the hospital or it did not. If it did, it could be liable; if it did not, and the individual defendant was the actual operator and master, why should there be a judgment against it?" Cited in that opinion was *Hogan* v. *Hospital Co.* (63 W. Va. 84; 59 S. E. 943), cited in *Stone* v. *Eisen Co.* (219 N. Y. 205), where it was said (at p. 90): " There can be no question about the liability of a hospital, which is being conducted for private gain and not for charitable purposes, for damages to its patients through the negligence or misconduct of its officers and employees. It is bound to exercise that degree of care towards its patients placed therein measured by the capacity of such patients to look after and provide for their own safety. It is the duty of such hospital to employ only competent physicians and nurses and to treat such patients with such skill and care as ordinarily obtain in the conduct of such institutions, and to protect its patients in such manner as their condition may render necessary, and such degree of care and diligence should be in proportion to the physical or mental ailments of the patient, rendering him unable to look after his own safety."

In *Mills* v. *Soc. of New York Hospital* (242 App. Div. 245; affd., 270 N. Y. 594) Mr. Justice SCUDDER, writing the opinion of the court, significantly stated (at p. 253), in reference to the *Schloendorff* case (*supra*): " It would seem that that decision was not based entirely on the ground that an eminent surgeon was an independent contractor. This inference may be drawn from the fact that, if such were the ground, it would be immaterial whether the hospital were charitable or conducted for profit." Thus, only if the decision in the *Schloendorff* case (*supra*) were based solely on the ground that the surgeon was an independent contractor, would it, according to Justice SCUDDER, be immaterial whether the hospital were charitable or conducted for profit. But he pointed out that the decision was not based entirely on that ground. And, indeed, it was not (*Hamburger* v. *Cornell University, supra*), for, as said in the *Schloendorff* case (*supra*, at p. 135): " A hospital opens its doors without discrimination to all who seek its aid. It gathers in its wards a company of skilled physicians and trained nurses, and places their services at the call of the afflicted, without scrutiny of the character or the worth of those who appeal to it, looking at nothing and caring for nothing beyond the fact of their affliction. In this beneficent work, it does not subject itself to liability for damages though the ministers of healing whom it has selected have proved unfaithful to their trust." This description hardly fits the institution operated by the defendant in the case at bar, which, though private, as distinguished from municipally operated hospitals, is noncharitable.

Charitable institutions have been held immune from liability and the courts have given various reasons therefor. (*Schloendorff* v. *New York Hospital, supra.*) But to this court it seems that public policy is the real reason for such immunity. Indeed, Judge CARDOZO himself, when speaking, in subsequent cases (*Matter of Bernstein* v. *Beth Israel Hospital, supra,* and *Hamburger* v. *Cornell University, supra*), of his holding in the *Schloendorff* case (*supra*), invariably cited it for the proposition that a physician, in treating a patient in a public or charitable hospital, does not charge it with liability for negligence; that " *Such* a hospital undertakes, not to heal * * * but merely to supply others who will heal * * * on their own responsibility."

No such reason can be invoked to immunize this defendant for the negligence of its interne in the treatment of this plaintiff. The interne was the defendant's regular, not special employee. What he did was within the scope of his duties for the defendant, and was part of a service for which the plaintiff was paying the defendant.

(*Stanley* v. *Schumpert*, 117 La. 255; 41 So. 565; *Brown* v. *La Societe Francaise*, 138 Cal. 475; 71 P. 516; *Malcolm* v. *Evangelical Lutheran Hospital Assn.*, 107 Neb. 101; 185 N. W. 330; *Stuart Circle Hospital Corp.* v. *Curry*, 173 Va. 136; 3 S. E. [2d] 153.) The interne was not an independent contractor so far as the plaintiff was concerned. Whatever his remuneration, the defendant, who selected, employed, directed and supervised him, paid it.

And as for the contention of the defendant that since it cannot practice medicine it should not be held responsible for the negligence of its interne, this defendant is not an ordinary business corporation. It is a hospital corporation organized to render a special service (Membership Corp. Law, § 130), as it existed prior to May 1, 1924, and §§ 4 and 40 of the Membership Corp. Law, designated " Old Law " in the 1939 Supplement to vol. 34 of McKinney's Consolidated Laws of New York) of which the Court of Appeals, in *People* v *Woodbury Dermatological Institute* (192 N. Y. 454, 458), said: " Thus, a hospital duly incorporated under the Membership Corporations Law unquestionably holds itself out as being able to diagnose, treat, operate and prescribe for human disease, pain, injury, deformity or physical condition; and such corporations do in fact offer and undertake publicly and frequently through the agency of advertisements to diagnose, treat, operate and prescribe for such diseases. An institution of this character, possessing legislative authority to practice medicine by means of its staff of registered physicians and surgeons, comes under the direct sanction of the law." (Cf. *Hannon* v. *Siegel-Cooper Co.*, 167 N. Y. 244, where a department store was held liable for the negligence of a dentist in connection with malpractice in the treatment of a patron by its dental department.)

It would seem that the public interest would be more fully served if the rule of immunity, heretofore applied to hospitals " if public or charitable," were not extended to non-charitable private hospitals, or those operated for profit. Thereby, such institutions will safeguard the public more adequately, and in the long run the increased efficiency will tend to benefit them as well as the public. Indeed, it would appear that as to charitable hospitals themselves, there is a strong trend at the present time to limit even their immunity. *Sheehan* v. *North Country Community Hospital* (*supra*) is an example. In that case Judge LOUGHRAN concluded his opinion with the statement: " We think it would not be a harmonious policy that would require this plaintiff to put up with her injuries on the score that the appellant is a charitable corporation." (Cf. *Geiger* v. *Simpson Methodist-Episcopal Church*, 174 Minn. 389; 219 N. W. 463; 12 N. Y. U. Law Quarterly Review, 515.)

Accordingly, the defendant's motion for a directed verdict is denied with an appropriate exception, and that of the plaintiffs granted with appropriate exceptions to the defendant.

A judgment will be entered in favor of the plaintiff Amelia Post in the sum of $5,000 to compensate her for her pain, suffering and injuries; and in favor of the plaintiff Jacob Post in the sum of $1,000 to compensate him for medical and other expenses and loss of services. Thirty days' stay and sixty days to make a case is granted to the defendant.