Dore, J.
The issue is whether defendant, a private hospital operated for profit, is responsible for its nurse’s negligent acts, not administrative or clerical, but performed in relation to a patient’s medical care in connection with an operation performed in the hospital by the patient’s own surgeon.
Plaintiff was a paying patient in defendant’s private hospital concededly operated for profit. On October 25, 1947, an anal fistula was removed by defendant, Dr. Eisenstat, a surgeon engaged by plaintiff. During the operation • that was had under a general anesthetic, plaintiff, the patient, was severely burned by an electric plate which was connected with and operated the electrocautery knife used by Dr. Eisenstat, the operating surgeon. Before the operation, the negative electric plate was prepared and applied under the patient’s body by a regular nurse of the hospital designated for the purpose by the hospital’s supervisory nurse. The negative electric plate was a part of a Bove electrosurgical machine which was part of the hospital equipment. The doctor, in reserving a room for the patient and the operation to be performed upon her, had specified that he wished to make use of such a machine.
The negative plate is a flat plate of malleable metal heavier than ordinary tin foil attached to which is a wire connected to the negative part of the machine. To apply the plate properly without danger of burning the patient, the plate itself must be smooth and clean and must be applied to the body with an *574 electrolyte, in this case a current-conducting jelly which is placed on the plate in contact with the patient’s body. Plaintiff’s family doctor who assisted at the operation testified that the plate must be applied completely so that the whole surface touches the body evenly; otherwise there may be small areas not touching the body and in and around such areas electric current is concentrated and may produce burns. The plate is first placed by the nurse on the operating table and the patient put on top of the plate; the weight of the body comes down on the plate and preserves contact; the plate is usually applied by nurses as a routine matter before the doctor enters the operating room and was so applied in this case by the hospital nurse, Miss Scott. The current passes through a positive electrode which does the cutting; the positive pole or cutting device in the operating surgeon’s hand is a fine wire which gets heated and cuts and coagulates but won’t cut unless the negative pole is under the patient. The doctor who is to operate relies on the nursing personnel of the hospital to put the machine and plates in place before he starts the operation.
The patient was unconscious during the operation; some time after the operation was over, it was ascertained that the patient had sustained severe burns in that part of the body with which the plate was in contact. Dr. Eisenstat testified that it was faulty contact with the patient’s body that produced the burns.
After trial before the court and a jury, the court -submitted to the jury the following questions of fact for special verdicts thereon, and the jury brought in the answers indicated to the questions as follows:
1. Were the injuries and burns caused by the plate of the Bove machine? A. Yes.
2. Was the plate of the Bove machine properly applied to the body of the plaintiff? A. No.
3. By whom was the plate of the Bove machine applied? A. Miss Scott.
4. Should Dr. Eisenstat who performed the operation have supervised the placing of the plate against the body of the plaintiff? A. No.
5. Amount of damages.— $7,000.
The parties moved for direction of a verdict and stipulated that the court render a general verdict in accordance with the facts and the law; defendant hospital also moved to set aside the jury’s answer to special question number 5 on the ground of excessiveness.
*575 Thereafter the court in an opinion dismissed the complaint against Dr. Eisenstat on the ground that there was no evidence of negligence against him; reduced the jury’s verdict in favor of the plaintiff from $7,000 to $5,000 on plaintiff’s stipulation to accept the lower amount (and plaintiff so stipulated), and directed judgment for $5,000 in plaintiff’s favor. Judgment was entered accordingly against defendant hospital. The hospital appeals.
Plaintiff did not appeal from dismissal against defendant Dr. Eisenstat; the hospital did appeal, but on argument withdrew that appeal so that no issue is presented to us with regard to the dismissal against Dr. Eisenstat. The sole issue is the immunity of a private noncharitable hospital organized and conducted for profit for the negligent act of one of its regular nurses in connection with the medical treatment of the patient.
In directing judgment against the hospital, the court relied on a decision of Special Term in the second department (Post v. Crown Heights Hosp., 173 Misc. 250 [Hallinan, J.; Feb., 1940]) in which the court, after a review of the authorities, held that a private noncharitable hospital was not immune for the negligent acts of an interne, the private hospital’s regular and not special employee in the treatment of a patient; that the public interest would be more fully served if the rule of immunity applied to public or charitable hospitals were not extended to private noncharitable hospitals or those operated for profit.
The question before us was specifically left open by the Court of Appeals in Kamps v. Crown Heights Hosp. (277 N. Y. 602). In that case the Appellate Division of the second department, reversing a judgment in plaintiff’s favor against a noncharitable hospital and directing dismissal of the complaint because of the negligence of a nurse in placing a hot water bag upon her feet whereby the patient was severely burned, dismissed on the ground in part that the nurse was specially retained by the patient and paid by the patient. In affirming, the Court of Appeals said: ‘ ‘ The nurse was employed by the patient and not by the hospital. The court does not decide any other question upon this record.”
Until the Court of Appeals expressly holds otherwise, we think we should follow the rule that a hospital whether charitable or private is immune from liability by reason of the negligence of a doctor or a nurse with respect to matters *576 relating to the patient’s medical care and attention. In Steinert v. Brunswick Home (259 App. Div. 1018) decided in June, 1940, four months after the Special Term decision in that department in Post v. Crown Heights Hosp. (supra) the Second Department adhered to the rule that a private hospital conducted for profit is not responsible for the act of a nurse that was part of the treatment of the patient and not an administrative or clerical act citing Schloendorff v. New York Hosp. (211 N. Y. 125); Matter of Renouf v. New York Central R. R. Co. (254 N. Y. 349), and Mieryjeski v. Bay Ridge Sanitarium (237 App. Div. 851).
In the Schloendorff case (supra) it is true that defendant was a charitable non-profit-making hospital, but Cardozo, J., in his opinion mentioned two grounds for the immunity of such hospital for the negligence of physicians and nurses in the treatment of patients. The first ground was the charitable nature of the hospital’s activities; the second ground for immunity was the relation subsisting between a hospital and the physicians and nurses who served. The Court of Appeals held that the true ground for the hospital’s exemption'is that the relation between a hospital and its physicians is not that of master and servant; and applied the same rule to nurses saying: “ It is true, I think, of nurses as of physicians, that in treating a patient they are not acting as the servants of the hospital. The superintendent is a servant of the hospital; the assistant superintendents, the orderlies and the other members of the administrative staff are servants of the hospital. Bui nurses are employed to carry out the orders of the physicians, to whose authority they are subject. The hospital undertakes to procure for the patient the services of a nurse. It does not undertake through the agency of nurses to render those services itself. The reported cases make no distinction in thai respect between the position of a nurse and that of a physiciaii [citing cases]; and none is justified in principle.” (211 N. Y. 125, 132.)
In language especially applicable to this case in which the accident happened by reason of the acts of preparation by the nurse immediately preceding the operation, Cardozo, J., added: “ The acts of preparation immediately preceding the operation are necessary to its successful performance, and are really part of the operation itself. They are not different in that respect from the administration of the ether. Whatever the nurse does in those preliminary stages is dope, not as the *577 servant of the hospital, but in the course of the treatment of the patient, as the delegate of the surgeon to whose orders she is subject. The hospital is not chargeable with her knowledge that the operation is improper any more than with the surgeon’s.” (Pp. 132-133.)
In Schneider v. New York Tel. Co. (249 App. Div. 400, 402, affd. 276 N. Y. 655), the plaintiff sued the New York Telephone Company, á defendant clearly operated for profit, for alleged malpractice of a doctor employed by the company in connection with the doctor’s medical activities. This court said: “ The defendant New York Telephone Company was held liable for the malpractice on the theory that the doctor was the servant of the company for whose negligence it was responsible. The doctrine of respondeat superior has no application to the situation shown by this record. A doctor employed under these conditions is not a servant of his employer but is engaged in an independent calling and his status is that of an independent contractor. The courts of this state have uniformly so held. • . *
“ Further this doctrine is not limited to charitable corporations because the question of charity is not the deciding factor. In Matter of Renouf v. New York Central R. R. Co. (254 N. Y. 349, 351) it was said that the rule e rests on the fact that one who employs such a nurse to take care of an injured person undertakes, not to treat the employee through the agency of the nurse, but to procure a nurse for the special purpose for which her services are required. ’ ’ ’
Defendant hospital in this case supplied the nurse to treat the patient not as the servant of the hospital, but for the special medical purposes for which her services were required.
If appellant had not withdrawn its appeal from that part of the judgment which dismissed the complaint against defendant, Dr. Eisenstat, on this record and in the light of the jury’s finding of fact, that part of the judgment would in any event have to be affirmed. Since appellant did not withdraw the appeal until the argument, such affirmance should be with costs against appellant to defendant Eisenstat.
The judgment so far as presently appealed from in favor of plaintiff and against appellant should be reversed, with costs to appellant, and the complaint against appellant dismissed, with costs.
G-lennon, J. P,, and Callahan, J., concur; Cohn and Shientag, JJ., dissent and vote to affirm.
*578 Judgment, so far as appealed from in favor of defendant Eisenstat, affirmed, with costs to said defendant against appellant. Judgment, so far as appealed from in favor of plaintiff and against appellant, reversed, with costs to appellant, and the complaint against appellant dismissed, with costs. Settle order on notice.