REGENTS OF THE UNIVERSITY OF MICHIGAN *v*
EMPLOYMENT RELATIONS COMMISSION
Opinion of the Court

1. COLLEGES AND UNIVERSITIES—LABOR RELATIONS—PUBLIC EMPLOYERS.

   The governing bodies of state universities, although having the entire control and management of the universities' affairs and property, are subject to regulation as a public employer under the statute governing employment relations of public employees (Const 1963, art 4, § 48; MCLA 423.201 *et seq.*).

2. COLLEGES AND UNIVERSITIES—LABOR RELATIONS—PUBLIC EMPLOYERS.

   The Regents of The University of Michigan, the governing body of that university, is a public employer within the meaning of the statute controlling employment relations of public employees (MCLA 423.201 *et seq.*).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4, 6, 8, 9] 15 Am Jur 2d, Colleges and Universities §§ 14, 15. 48 Am Jur 2d, Labor and Labor Relations § 1191 *et seq.*
[3] 2 Am Jur 2d, Administrative Law § 553 *et seq.*
[7] 15 Am Jur 2d, Colleges and Universities §§ 5–8.

3. ADMINISTRATIVE LAW—JUDICIAL REVIEW—UNDISPUTED FACTS—LEGAL CONCLUSIONS.

> Findings made by an administrative agency upon undisputed facts are legal conclusions and are reviewable by a court in the same manner as are questions of law.

4. ADMINISTRATIVE LAW—LABOR RELATIONS—PUBLIC EMPLOYEES—JUDICIAL REVIEW.

> The decision of the Employment Relations Commission as to whether the interns, residents, and post-doctoral fellows associated with The University of Michigan Medical Center are employees within the meaning of the statute governing employment relations of public employees is a decision on a question of law which is properly subject to judicial review (MCLA 423.201 *et seq.*).

5. WORDS AND PHRASES—EMPLOYEE—INTERPRETATION.

> The word "employee" is quite flexible in meaning and subject to different interpretations in accordance with the intent of the statute in which it is used.

6. COLLEGES AND UNIVERSITIES—STATE UNIVERSITIES—PUBLIC EMPLOYER.

> A state university is a unique public employer, because its powers, duties, and responsibility are derived from the Constitution rather than from enactments of legislation.

7. COLLEGES AND UNIVERSITIES—STATE UNIVERSITIES—LEGISLATIVE CONTROL.

> The Legislature cannot enact any law which will regulate or direct the manner in which the educational processes at state universities are to be conducted, because the governing bodies of state universities have exclusive control of all matters dealing with the education of the students.

8. COLLEGES AND UNIVERSITIES—LABOR RELATIONS—INTERNS—PUBLIC EMPLOYEES.

> The interns, residents, and post-graduate fellows associated with The University of Michigan Medical Center, being students, are not employees within the meaning of the statute governing employment relations of public employees, because to hold that they were employees, absent a clear legislative intent, would infringe on the governing body's constitutional authority to control and manage the educational affairs of the university.

CONCURRENCE IN PART AND DISSENT IN PART
BY McGREGOR, P. J.

9. COLLEGES AND UNIVERSITIES—LABOR RELATIONS—INTERNS—PUBLIC
EMPLOYEES.

The interns, residents, and post-graduate fellows associated with
The University of Michigan Medical Center are public employ-
ees within the meaning of the collective bargaining right of
public employees because, although they are also students,
being a student and an employee are not mutually exclusive
(MCLA 423.201 et seq.).

Appeal from the Michigan Employment Relations
Commission. Submitted Division 2 October 14,
1971, at Lansing. (Docket No. 11524.) Decided
January 21, 1972. Leave to appeal granted, 387 Mich
773.

Petition for representation election by The Uni-
versity of Michigan Interns-Residents Association.
Petition granted. The Regents of The University
of Michigan appeal by leave granted. Reversed.

Levin, Levin, Garvett & Dill (by Harvey I. Wax
and Robert J. Finkel), for plaintiff University of
Michigan Interns-Residents Association.

Butzel, Long, Gust, Klein & Van Zile (by Robert
J. Battista), for defendant Regents of The Univer-
sity of Michigan.

Frank J. Kelley, Attorney General, Robert A.
Derengoski, Solicitor General, and Francis W. Ed-
wards, Assistant Attorney General, for defendant
Michigan Employment Relations Commission.

Before: McGREGOR, P. J., and HOLBROOK and VAN
VALKENBURG,* JJ.

---

* Former circuit judge, sitting on the Court of Appeals by as-
signment pursuant to Const 1963, art 6, § 23 as amended in 1968.

VAN VALKENBURG, J.   Appellant Regents of the
University of Michigan seek review of the March 16,
1971 decision and order of appellee Michigan Em-
ployment Relations Commission, whereby a repre-
sentation election was ordered to be conducted
among the interns, residents, and post-doctoral fel-
lows working for the appellant at the University of
Michigan Medical Center for the purpose of deter-
mining whether said individuals wished to be rep-
resented for collective bargaining purposes by the
University of Michigan Interns-Residents Associa-
tion.

The genesis of this story goes back to the fall of
1966, when a group of interns and resident doctors
connected with the University Hospital, desiring to
bargain with the Regents of the University of Mich-
igan concerning wages, rates of pay, and conditions
of employment, decided to band together and form
the University of Michigan Interns-Residents Asso-
ciation.   The Regents, however, refused to recognize
this newly formed organization as a bargaining
agent.   The association thereafter filed an election
petition with the commission in April 1970.

An extensive hearing was held in June and July
of 1970 before a trial examiner.   Briefs were filed,
and oral arguments were presented to the full com-
mission on March 2, 1971, whereupon the commis-
sion issued its order of March 16, 1971, setting the
election for April 21, 22, and 23, 1971.   Prior to the
election the Regents sought to stay the election.
This Court denied the motion to stay the election,
"but without prejudice to the plaintiff's right to de-
cline to bargain with the bargaining agent until a
decision by this Court on the application for leave
and until further order of the Court".

The election was held and resulted in 296 votes
in favor of representation, 115 against, and 4 chal-

lenged ballots.. The association soon after the election requested of the Regents that negotiations be instituted, but this was refused on the theory that the matter was still pending before this Court. Leave to appeal was granted and an order was issued staying all proceedings among the parties until such time as a final decision could be made.

The factual setting having been laid, we must now look at the issues raised.

*May the Public Employment Relations Act be applied to The Regents of The University of Michigan in the present matter without contravening their authority under Const 1963, art 8, § 5?*

The question of whether the constitutional grant of authority to supervise, direct, and control university affairs insulates the governing bodies of state universities from regulation as a public employer has now been laid to rest. The Michigan Supreme Court in *Board of Control of Eastern Michigan University* v *Labor Mediation Board,* 384 Mich 561, 565–566 (1971), while recognizing that:

"The powers and prerogatives of Michigan Universities have been jealously guarded not only by the boards of those universities but by this Court in a series of opinions running as far back as 1856",

nonetheless held that:

"Here we find no plenary grant of powers which, by any stretch of the imagination, would take plaintiff's operations outside of the area of public employment. 'Public employment' is clearly intended to apply to employment or service in all governmental activity, whether carried on by the state or by townships, cities, counties, commissions, boards or other governmental instrumentalities. It is the entire public sector of employment as distinguished from

private employment. The public policy of this state as to labor relations in public employment is for legislative determination."

We therefore hold that, while the Regents continue to enjoy the entire control and management of its affairs and property, they are a public employer and thus are subject to regulation as a public employer.

Hence, we are confronted with the crucial issue.

*Are interns, residents and post-doctoral fellows serving at the university and affiliated hospitals of The University of Michigan Medical Center public employees within the meaning of 1965 PA 379?*

Two members of the commission, who comprised the majority, decided that, although the persons who sought to be included in the bargaining unit were students of the University of Michigan Medical School, they nonetheless also had an employment relationship with the university and were entitled to unite for collective bargaining purposes. The majority determined the appropriate unit to be:

"All interns, residents and fellows employed by the Regents of The University of Michigan possessing the equivalent of a minimum of an M. D. or D.D.S. degree, and post-doctoral fellows in the clinical and basic sciences, EXCLUDING pharmacy interns, dietetic interns, nurse anesthetist trainees, chaplaincy interns, and all other employees."

The third member of the commission dissented, holding that:

"I would find on the basis of the record as a whole that interns and residents are not employees in the traditional or legal sense but are in fact post-graduate students. Their activities represent a continuation of their medical study and are, therefore, pri-

marily educational rather than employment in nature. I would find, contrary to my colleagues, that the interns and residents are not public employees for whom this Commission should direct an election."

Appellees maintain that the findings of fact made by the majority of the Employment Relations Commission are final, and that the reviewing court may not substitute its judgment for that of the administrative agency if such findings by the agency are supported by competent, material, and substantial evidence. Generally speaking, we have no quarrel with this argument; however, we note with approval the language of 8 Callaghan's Michigan Pleading & Practice (2d ed), § 60.88, pp 259–260, that:

"Legal conclusions drawn by an agency, and questions of law involved in its decisions or determinations, are reviewable. Thus it has been decided that findings upon undisputed facts are reviewable, the determination in such case being a legal conclusion, and that legal conclusions based upon findings of fact are subject to review."

The question herein raised, as to whether the interns, residents, and post-graduate fellows are to be considered employees within the meaning of the statute, is a question of law, and thus is properly the subject of review by this Court.

In 1947 the Legislature enacted 1947 PA 336, commonly referred to as the Hutchinson Act[1], for the purpose of preventing strikes among public employees and creating a procedure by which to mediate grievances. In 1965 the Legislature, exercising

---

[1] Named after Representative Edward Hutchinson who sponsored the legislation. He is now a United States Congressman from the 4th district.

its authority granted in Const 1963, art 4, § 48,[2] enacted 1965 PA 379; MCLA 423.201 *et seq;* MSA 17.-455(1) *et seq,* which substantially amended the 1947 act and included eight new sections.

The pertinent part of the title to the act as amended reads:

"An act to prohibit strikes by *certain public* employees; * * * to declare and protect the rights and privileges of public employees; * * * ." (Emphasis supplied.)

The statute does not, however, define what is meant by the words "public employees". Some help is found in *Hillsdale Community Schools* v *Labor Mediation Board,* 24 Mich App 36, 41 (1970), where it was held that:

"The words 'public employee' are to identify the employees *other than private* and does not define public employee so as to exclude supervisory personnel."

The word "employee" is quite flexible in meaning and subject to different interpretations in accordance with the intent of the statute in which it is used. Illustrative of this point, we quote the language found in 30 CJS, Employee, p 672:

" 'Employee' has neither technically nor in general use a restricted meaning by which any particular employment or service is indicated, and that it may have different meanings in different connections admits of no doubt. The word 'employee' has no fixed meaning which must control in every instance, and it is not a word of art, but takes color from its surroundings and frequently is carefully defined by the statute where it appears."

_____

2 "The legislature may enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service."

Since the term "employee" is nebulous in nature and undefined in the statute, what then was the intent of the Legislature with regard to interns, residents, and post-graduate fellows acting as such at hospitals associated with state universities? It is first necessary to look at the nature of these persons' positions. Webster's Third New International Dictionary defines the word "intern" as:

"an advanced student or recent graduate in a professional field * * * one trained in a profession allied to medicine who undergoes a period of practical clinical experience prior to practicing his profession."

The same dictionary defines "resident" as:

"a physician serving a residency",

with "residency" being defined as:

"a period of advanced medical training and education that normally follows graduation from medical school and completion of internship and that consists of supervised practice of a specialty in a hospital and its out-patient department and instruction from specialists on the hospital staff."

"Fellow" is defined as:

"a young physician who has completed training as an intern and resident and has been granted a stipend and position allowing him to do further study and research in a specialty."

The relationship between these persons and the Regents thus assumes a unique blend of the aspects of both employer-employee and teacher-student. Neither can we overlook the fact that a state university is a unique public employer, because its powers, duties and responsibility are derived from the Constitution rather than from enactments of

legislation.  See *Regents of University of Michigan v Labor Mediation Board,* 18 Mich App 485, 490 (1969).

The Regents have exclusive control of all matters dealing with the education of the student.  To this end, the Legislature cannot enact any law which will regulate or direct the manner in which the educational processes are to be conducted.  The wisdom of this independence was well stated in *Branum v Board of Regents of University of Michigan,* 5 Mich App 134, 138 (1966):

"This Court recognizes that such independence must be maintained in educational matters in order to provide the highest quality education for the students of Michigan, and in order to maintain the outstanding national reputation of the University."

The educational and employment aspects of the relationship of the interns, residents, and post-graduate fellows with the Regents are inextricably mixed.  To hold that these persons are employees within the meaning of the statute would impinge, to some degree, upon the constitutional authority of the Regents to control and manage the educational affairs of the University.  Absent some clear expression by the Legislature that they intended to excise their constitutional authority to regulate labor relations among public employees in such a manner as to so impinge upon the Regents' constitutional authority, this Court will assume that the Legislature did not intend such a result.  If the Legislature had intended that graduate students were to be included as public employees within the meaning of the statute, they would have clearly indicated such an intent.

Courts cannot be oblivious to the consequences of their decisions.  If the interns, residents, and post-

graduate fellows associated with the University Medical Center were to be classified as herein requested, the assistants in all other departments, working part-time at their trade or profession for a small stipend, would, in order to avoid discrimination, conclude that they were entitled to the same treatment. Such a result could well wreak havoc upon the very ability of the Regents to control and manage the educational affairs of the University. It is further noted that the Legislature, itself, considers interns and other assistants as students rather than employees for the purpose of determining the amount of annual appropriation made to the University.

This case is apparently one of first impression, not only in Michigan, but in the entire United States. While the attorneys for both sides filed long and exhaustive briefs, which clearly indicate the importance of this litigation, none of the cases therein cited offer any real help in the determination of this issue. It would be of little value to review all the citations, since, in the final analysis, all can be distinguished. We would also note that in New York interns and residents may organize for purposes of collective bargaining; however, such bargaining units are specifically provided for by statute.[3] The Legislature of that state has spoken on the question; the Legislature of Michigan has not.

Therefore, for the reasons stated herein, it is the conclusion of this Court that the interns, residents, and post-graduate fellows associated with the University of Michigan Medical Center are not public employees within the meaning of 1965 PA 379; MCLA 423.201 *et seq;* MSA 17.455(1) *et seq.*

---

[3] 30 McKinney's Consolidated Laws, Labor Law, § 705, Subd. 2.

The decision of the Michigan Employment Relations Commission is hereby reversed and set aside, but without costs, a public question being involved.

Holbrook, J., concurred.

McGregor, P. J. (*concurring in part and dissenting in part*). I concur in my Brothers' conclusion that The University of Michigan Board of Regents is a public employer. However, I am constrained to dissent from my Brothers' holding that the interns, residents, and post-doctoral fellows are not "public employees" within the meaning of 1965 PA 379 (MCLA 423.201 *et seq;* MSA 17.455 [1] *et seq*).

The majority opinion holds that the interns, residents, and post-doctoral fellows cannot be characterized as employees because they are students. The fact that the members of the interns-residents association are "students" does not thereby preclude them from also maintaining their status of employees of the University. In short, this is not a situation where the interns-residents are either students or employees; the terms "student" and "employee" are not mutually exclusive.

The Regents cannot refute the fact that the interns and residents do not participate in classroom work, but are instead engaged in clinical work in the hospital. Furthermore, the interns and residents treat patients in a clinical context, although under the supervision of hospital personnel. This fact further serves to emphasize the employee status of the interns and residents, as it is directly analogous to the supervisory capacity which is present in the normal employer-employee relationship. Each year, the resident or intern signs a one-year agreement deemed as binding by both parties; they receive compensation and are subject to Federal income tax thereon. The benefits provided by the hospital to

its regular employees are provided to the members of the Association as well. Indeed, interns and resident physicians have been considered employees for various purposes by the many courts of the United States. In *Martin* v. *Roosevelt Hospital* (CA 2, 1970), 426 F2d 155, the Court of Appeals held that a resident physician is an employee under the re-employment provisions of the selective service statute. The Court also noted that the position of resident physician is not so temporary as to be regarded as casual employment. In *Woddail* v. *Commissioner of Internal Revenue* (CA 10, 1963), 321 F2d 721, a doctor was employed as a resident physician and his salary was denominated as a stipend. The doctor then excluded his tax-exempt fellowship amount from his gross income. The Commissioner of Internal Revenue ruled that the doctor, not being a candidate for a degree at an educational institution, was therefore not a recipient of a scholarship excludable under § 117 of the Internal Revenue Code. The Court agreed with the Commissioner and found that the examination of the position of a resident physician vis-a-vis the hospital results in a perfect example of an employer-employee relationship.

In negligence cases, particularly malpractice cases, interns and resident physicians have long been determined as employees of the hospital working directly under its supervision and control and acting on behalf of the hospital. See *Stuart Circle Hospital Corp.* v. *Curry* (1939), 173 Va 136 (3 SE2d 153); *Post* v. *Crown Heights Hospital, Inc.* (1940), 173 Misc 250 (17 NYS 2d 409); *City of Miami* v. *Oates* (1942), 152 Fla 21 (10 So 2d 721); *Moeller* v. *Hauser* (1952), 237 Minn 368 (54 NW2d 639); *Parmerter* v. *Osteopathic General Hospital* (Fla, 1967), 196 So 2d 505.

Hospital interns and resident physicians have also been held to be employees within the context of workmen's compensation acts. In *Bernstein* v. *Beth Israel Hospital* (1923), 236 NY 268 (140 NE 694), the Court, analyzing the position of interns and resident physicians, held that:

"He was a servant or employee by every test of permanence of duty, of intimacy of contact, and of fullness of subjection."

See also *Nordland* v. *Poor Sisters of St. Francis* (1954); 4 Ill App 2d 48 (123 NE 2d 121).

The aforementioned cases necessitate the conclusion that, for the purposes of collective bargaining, the members of the interns-residents association possess the requisite degree of employee status as to come within the scope of public employees, within the meaning of 1965 PA 379.

Therefore, I dissent from the majority opinion and vote to affirm the order of the Michigan Employment Relations Commission, without costs.