## REGENTS OF THE UNIVERSITY OF MICHIGAN v EMPLOYMENT RELATIONS COMMISSION

1. Administrative Law—Constitutional Law—Statutes—Administrative Procedures Act—Michigan Employment Relations Commission.

The proper scope of review of an opinion of an administrative agency is controlled both by constitution and statutory provision; under a section of the Administrative Procedures Act the Court may review the law regardless of the factual findings of the Michigan Employment Relations Commission (Const 1963, art 6, § 28; MCLA 24.201[a]).

2. Administrative Law—Appeal and Error—Supreme Court—Fact Question.

Michigan Supreme Court should not substitute its own judgment for that of an administrative agency when dealing with a purely factual question.

3. Constitutional Law—Statutes—Legal Question.

A conflict between the Michigan Constitution and a statute is clearly a legal question which only a court can decide.

4. Appeal and Error—Questions of Law.

Conclusions drawn from undisputed facts are questions of law.

5. Labor Relations—Public Employer—Colleges and Universities —Public Employees Relations Act.

The University of Michigan is a public employer within the meaning of the Public Employees Relations Act (MCLA 423.201 et seq.).

6. Constitutional Law—Public Employees—Public Policy.

The people, through the passage of a section of an article of the

---

References for Points in Headnotes
[1–3, 12] 2 Am Jur 2d, Administrative Law §§ 455, 456.
[4] 5 Am Jur 2d, Appeal and Error § 829.
[5, 8–11] 15 Am Jur 2d, Colleges and Universities §§ 11–15.
[6] No references.
[7] 16 Am Jur 2d, Constitutional Law § 200.

Michigan Constitution, have deemed the resolution of public employee disputes a matter of public policy (Const 1963, art 4, § 48).

7. CONSTITUTIONAL LAW—SUPREME COURT.

Michigan Supreme Court must attempt to harmonize the various constitutional provisions and give meaning to all of them.

8. LABOR RELATIONS—PUBLIC EMPLOYEES RELATIONS ACT—CONSTITUTIONAL LAW—COLLEGES AND UNIVERSITIES.

Interns, residents and post-doctoral fellows may be employees and have rights to organize under the provisions of the Public Employees Relations Act without infringing on the constitutional autonomy of the Board of Regents of the University of Michigan (MCLA 423.201 *et seq.).*

9. CONSTITUTIONAL LAW—COLLEGES AND UNIVERSITIES—PUBLIC EMPLOYEES.

Section of an article of the Michigan Constitution providing in part that Regents of the University of Michigan shall constitute a body corporate and shall have general supervision of its institution is not violated if members of the University of Michigan Interns-Residents Association are held to be public employees (Const 1963, art 8, § 5).

10. LABOR RELATIONS—PUBLIC EMPLOYMENT—GOVERNMENTAL ACTIVITY—STATUTES—PUBLIC EMPLOYEES RELATIONS ACT.

"Public employment" under the Public Employees Relations Act, is clearly intended to apply to employment or service in all governmental activity, whether carried on by the state or townships, cities, counties, commissions, boards or other governmental instrumentalities, it is the entire public sector of employment as distinguished from private employment; the only exception is for the classified civil service and no exception is made for people who have a dual status of students and employees.

11. LABOR RELATIONS—EMPLOYEES—PUBLIC EMPLOYEES RELATIONS ACT.

Members of the University of Michigan Interns-Residents Association are employees within the meaning of the Public Employees Relations Act (MCLA 423.201 *et seq.).*

12. LABOR RELATIONS—MICHIGAN EMPLOYMENT RELATIONS COMMISSION—APPEAL AND ERROR—INTERNS—RESIDENTS—POST-DOCTORAL FELLOWS—EMPLOYEES.

Michigan Supreme Court cannot, pursuant to a section of the

Administrative Procedures Act, overturn the findings of the Michigan Employment Relations Commission unless they are not supported by competent, material, and substantial evidence on the record; findings that interns, residents and post-doctoral fellows are employees are supported by competent, material, and substantial evidence on the whole record (MCLA 24.306).

Appeal from Court of Appeals, Division 2, McGregor, P. J., and Holbrook and Van Valkenburg, JJ., reversing Michigan Employment Relations Commission. Submitted January 3, 1973. (No. 4 January Term 1973, Docket Nos. 53,940, 53,941.) Decided February 20, 1973.

38 Mich App 55 reversed.

Petition for representation election by the University of Michigan Interns-Residents Association. Petition granted by Michigan Employment Relations Commission. The Regents of the University appealed to the Court of Appeals by leave granted. Reversed. Michigan Employment Relations Commission and the University of Michigan Interns-Residents Association appeal. Reversed.

*Levin, Levin, Garvett & Dill* (by *Harvey I. Wax* and *Robert J. Finkel),* for University of Michigan Interns-Residents Association.

*Butzel, Long, Gust, Klein & Van Zile* (by *Robert J. Battista* and *Robert M. Vercruysse),* for Regents of the University of Michigan.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Francis W. Edwards,* Assistant Attorney General, for Michigan Employment Relations Commission.

SWAINSON, J. In 1966, a group of interns, residents and post-doctoral fellows connected with the

University of Michigan Hospital and its affiliates organized the University of Michigan Interns-Residents Association (hereinafter referred to as the Association). The Association attempted to bargain with the University Hospital Administrators concerning the compensation of interns and residents. The University asserted its right to unilaterally determine such compensation. On March 19, 1970 the Association filed a written request that the Regents of the University of Michigan recognize it as the bargaining representative of the interns, residents and post-doctoral fellows serving at the University Hospital and its affiliates. The Regents denied this request on or about March 31, 1970.

The Association then filed a petition for representation with the Michigan Employment Relations Commission (hereinafter referred to as MERC) on April 19, 1970. A formal hearing was held before a commission trial examiner on June 5, July 6, 7 and 27, 1970. The transcript of the hearing totaled over 700 pages and 28 exhibits were introduced into evidence. Briefs were filed with the MERC in October 1970 and oral arguments were held before the commission on March 2, 1971.

On March 16, 1971 a majority of the members of the commission issued a decision holding:

1. That the Association is a labor organization within the meaning of the Michigan Public Employees Relations Act[1] (hereinafter referred to as PERA).

2. That the University of Michigan is a public employer subject to the provisions of PERA and thus the commission has jurisdiction of the matter.

3. That the members of the Association are public employees under the provisions of PERA.

---

[1] 1965 PA 379; MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.*

4. The employment relationship between the parties is not a casual one as that term is used to designate exclusions from a bargaining unit.

The majority of the commission further ordered that an election be held and defined the appropriate bargaining unit. One member of the commission held in a dissent that interns and residents are post-graduate students whose activities are primarily educational and are not employees in the traditional sense.

The Regents applied for leave to appeal in the Court of Appeals and such was granted on June 9, 1971. The Court of Appeals denied the Regent's motion to stay the representation election and MERC conducted such an election. Of the 415 individuals who cast votes, 296 voted for representation, 115 voted against, and 4 ballots were challenged. The Association soon after the election requested that negotiations be instituted, but the Regents refused on the theory that the matter was still pending in court. The Court of Appeals on June 24, 1971 issued an order staying all proceedings until a final decision of that Court.

On January 21, 1972 the majority of the Court of Appeals reversed the findings of the MERC and held as a matter of law that interns, residents, and post-doctoral fellows cannot be characterized as employees. 38 Mich App 55. Judge McGREGOR in dissent held that the members of the Association could be both students and public employees. 38 Mich App 66. We granted leave to appeal. 387 Mich 773.

Several issues have been raised on appeal. The first issue is whether the Court of Appeals applied the proper scope of review in reviewing a decision of the Michigan Employment Relations Commission, an administrative agency. Counsel for the

Association and MERC contend that the proper scope of review requires the Court of Appeals to determine whether the decision is supported by competent, material and substantial evidence on the whole record. The majority opinion of the Court of Appeals makes no reference to the record prepared by the commission and hence petitioners contend that the Court of Appeals applied an improper scope of judicial review.

The proper scope of review of an opinion of an administrative agency is controlled both by constitution and statutory provision. Article 6, § 28 of the 1963 Constitution provides:

"All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law."

The Administrative Procedures Act, 1969 PA 306; MCLA 24.201 *et seq.;* MSA 3.560(101) *et seq.* provides in § 106:

"Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

"(a) In violation of the constitution or a statute.

*    *    *

"(d) Not supported by competent, material and substantial evidence on the whole record."

Under MCLA 24.306(1)(a); MSA 3.560(206)(1)(a), the Court may review the law regardless of the factual findings of the commission.

The problem of determining questions of fact versus questions of law versus mixed questions of law and fact is one that has concerned many courts and legal commentators. As Justice Souris stated in *Wickey v Employment Security Commission,* 369 Mich 487, 490, 493 (1963):

"Nothing in the foregoing statutory language limits the judiciary's power to review administrative determinations of issues of law as distinguished from issues of fact. However, with reference *only* to 'findings of fact made by the appeal board,' we are required by the statute to consider such findings conclusive unless they are 'contrary to the great weight of the evidence.' Therein lies part of our difficulty, for only rarely have we made the sometimes difficult effort to distinguish between issues of fact, issues of law, and compound issues of fact and law. Too frequently we have applied to all such issues the statutory limitation upon our review of factual determinations set forth above from section 38 of the act.

\*   \*   \*

"As we view our appellate function, and that of the circuit court, we must determine first whether or not the appeal board's conclusion of law, accepting for this purpose all of the findings of fact of the appeal board, was a legally valid conclusion. Only if we conclude that it was, need we determine whether or not the appeal board's findings of fact were supported by the great weight of the evidence."

This view as to the proper scope of review was cited with approval by Justice O'Hara in his opinion in *American Telephone & Telegraph Co v*

*Employment Security Commission,* 376 Mich 271,
277 (1965). Both petitioners cite numerous cases
holding that our Court should not substitute its
own judgment for that of an administrative
agency. We agree with that principle of law but
such agreement merely assumes that we are deal-
ing with a purely factual question. In this case, the
Court is of the opinion that it is also dealing with
questions of law, particularly since respondent
contends that it would violate Article 8, § 5 of the
1963 Constitution[2] to apply the provisions of the
PERA to members of the Association.

A conflict between the constitution and the stat-
ute is clearly a legal question which only a court
can decide. We must first determine the legal
questions involved and in so doing are not limited
by the requirement of MCLA 24.306(d), MSA
3.560(206)(d).[3]

The threshold issue is whether the application of
the provisions of PERA to the members of the

---

[2] Const 1963, art 8, § 5 reads as follows:

"The regents of the University of Michigan and their successors in
office shall constitute a body corporate known as the Regents of the
University of Michigan; the trustees of Michigan State University and
their successors in office shall constitute a body corporate known as
the Board of Trustees of Michigan State University; the governors of
Wayne State University and their successors in office shall constitute
a body corporate known as the Board of Governors of Wayne State
University. Each board shall have general supervision of its institu-
tion and the control and direction of all expenditures from the
institution's funds. Each board shall, as often as necessary, elect a
president of the institution under its supervision. He shall be the
principal executive officer of the institution, be ex-officio a member of
the board without the right to vote and preside at meetings of the
board. The board of each institution shall consist of eight members
who shall hold office for terms of eight years and who shall be elected
as provided by law. The governor shall fill board vacancies by ap-
pointment. Each appointee shall hold office until a successor has been
nominated and elected as provided by law."

[3] There is an alternative ground upon which we can determine the
questions of law here involved. The facts in this case are undisputed
and our Court has held that conclusions drawn from undisputed facts
are questions of law. *Kimber v Michigan Light Co,* 229 Mich 663
(1925).

Association would violate Article 8, § 5 of the 1963 Constitution by infringing upon the autonomy of the Regents in the operation of the educational sphere of the University of Michigan. It should be noted that both the MERC and the Court of Appeals found that the University of Michigan is a public employer within the meaning of the PERA. The Regents have not appealed this issue. We believe that both the MERC and the Court of Appeals were correct in holding that the University of Michigan is a public employer within the meaning of the PERA.

In *Regents of the University of Michigan v Labor Mediation Board,* 18 Mich App 485 (1969), the Regents filed a complaint for declaratory judgment contending they were not a public employer within the meaning of the PERA. The complaint was filed after the Labor Mediation Board had ruled that the University of Michigan was subject to the provisions of the PERA. Both the trial court and the Court of Appeals ruled against the Regents. The Court of Appeals stated (p 490):

"Thus, the plaintiff derives its being from a provision of the basic law of this state, the constitution, which was adopted by the people of this state in 1963. The election laws further provide that the regents shall be elected at the general election which is held in the fall of every even-numbered year. A further indication that the plaintiff is a public institution is found in Const 1963, art 8, § 4, which provides, 'The legislature shall appropriate moneys to maintain the University of Michigan,' and we recognize that the legislature does each year appropriate moneys to maintain the plaintiff. These moneys are tax moneys derived from general taxation on all of the people of this state, and the legislature is the only body that has the power to appropriate the public funds of this state. Further, the Supreme Court has recognized that the University is a state agency within the executive branch of state gov-

ernment and that the regents thereof are state officers. See *People for use of Regents of University of Michigan v Brooks* (1923), 224 Mich 45; *Attorney General, ex rel Cook, v. Burhans* (1942), 304 Mich 108.

"We conclude on the basis of the foregoing that the plaintiff is a public body corporate deriving its being from the people, and is supported by the people, and the regents, who are state officers, are elected by the people. Thus, the plaintiff is a public employer."

In a companion case, *Board of Control of Eastern Michigan University v Labor Mediation Board,* 18 Mich App 435 (1969) the Court of Appeals held that Eastern Michigan University was a public employer. Our Court granted leave to appeal and affirmed the judgment of the Court of Appeals. 384 Mich 561 (1971). The Court stated (pp 565–567):

"The powers and prerogatives of Michigan universities have been jealously guarded not only by the boards of those universities but by this Court in a series of opinions running as far back as 1856. See, *The People ex rel. Drake v The Regents of the University of Michigan* (1856), 4 Mich 98; *The People v The Regents of the University* (1869), 18 Mich 469; * * * ."

"The above cases reflect the holdings of this Court that a constitutional corporation, such as plaintiff, has 'the entire control and management of its [the University's] affairs and property.' *Weinberg v The Regents of the University of Michigan, supra* [97 Mich 246 (1893)]. In the main, they deal with situations where the legislature attempted to impose its will upon the internal operations of a university.

*    *    *

"Here we find no plenary grant of powers which, by any stretch of the imagination, would take plaintiff's operations outside of the area of public employment. 'Public employment' is clearly intended to apply to employment or service in all governmental activity, whether carried on by the state or by townships, cities, counties, commissions, boards or other governmental

instrumentalities. It is the entire public sector of employment as distinguished from private employment. The public policy of this state as to labor relations in public employment is for legislative determination. The sole exception to the exercise of legislative power is the state classified civil service, the scheme for which is spelled out in detail in Article 11 of the Constitution of 1963. We conclude that the autonomy sought by plaintiff in the area of labor relations is unnecessary for it to maintain 'the entire control and management of its affairs and property.'"

Thus, it is clear that the rationale of the *Eastern Michigan* case is applicable to the University of Michigan at least insofar as the issue of the University being a public employer is concerned. Article 8, § 6 of the 1963 Constitution provides in part:

"Other institutions of higher education established by law having authority to grant baccalaureate degrees shall each be governed by a board of control which shall be a body corporate. The board shall have general supervision of the institution and the control and direction of all expenditures from the institution's funds."

The Convention comment[4] to this section states:

"This is a new section relating to governing bodies of other state-supported institutions of higher learning which have authority to grant baccalaureate degrees.
· "The provisions relative to their boards of control are similar to those for the institutions named in Sec. 5 of this Article."

Since the Eastern Michigan University Board is now on a comparable level with the Regents of the University of Michigan, and since Eastern Michigan University is a public employer within the meaning of the PERA, then the University of

---

[4] Address to the People, August 1, 1962, p 80.

Michigan is also a public employer within the meaning of the PERA.

The key contention of the respondent, concurred in by a majority of the Court of Appeals, that to hold the members of the Association are employees would contravene Article 8, § 5 of the 1963 Constitution. This constitutional provision has its roots in Article 13, §§ 6–8 of the 1850 Constitution. The desires of the framers of the 1850 and subsequent constitutions to provide autonomy to the Board of Regents in the educational sphere have been protected by our Court for over a century.[5] This concern for the educational process to be controlled by the Regents does not and cannot mean that they are exempt from all the laws of the state. When the University of Michigan was founded in the 19th Century it was comparatively easy to isolate the University and keep it free from outside interference. The complexities of modern times makes this impossible. Problems concerning the disputes between employees and public employers were not given full constitutional recognition until the 1963 Constitution.[6] The people, through the passage of Article 4, § 48 of the 1963 Constitution have deemed the resolution of public employee disputes a matter of public policy. This Court must attempt to harmonize the various constitutional provisions and give meaning to all

[5] *The People ex rel Drake v The Regents of the University of Michigan,* 4 Mich 98 (1856); *The People v The Regents of the University,* 18 Mich 468 (1869). See also *Board of Control of Eastern Michigan University v Labor Mediation Board,* 384 Mich 561, 565 (1971) for additional cases decided by our Court involving the University.

[6] In the Constitutions of 1850, Article 6, § 23 and in the Constitution of 1908, Article 16, § 7, it was provided that "[t]he legislature may establish courts of conciliation with such powers and duties as shall be prescribed by law." This, however, is far removed from the specific constitutional provision of Article 4, § 48 of the 1963 Constitution concerning disputes in the public employment area.

of them. *Thoman v City of Lansing,* 315 Mich 566,
576 (1946); *Kunzig v Liquor Control Commission,*
327 Mich 474, 480–481 (1950); *Brouwer v Kent
County Clerk,* 377 Mich 616, 648 (1966).

We agree with the reasoning of the Court of
Appeals in *Branum v Board of Regents of Univer-
sity of Michigan,* 5 Mich App 134 (1966). The issue
in that case was whether the Legislature could
waive governmental immunity for the University
of Michigan because it was a constitutional corpo-
ration. The Court of Appeals stated (pp 138–139):

"In spite of its independence, the board of regents
remains a part of the government of the State of
Michigan.

*    *    *

"It is the opinion of this Court that the legislature
can validly exercise its police power for the welfare of
the people of this State, and a constitutional corpora-
tion such as the board of regents of the University of
Michigan can lawfully be affected thereby. The Univer-
sity of Michigan is an independent branch of the gov-
ernment of the State of Michigan, but it is not an
island. Within the confines of the operation and the
allocation of funds of the University, it is supreme.
Without these confines, however, there is no reason to
allow the regents to use their independence to thwart
the clearly established public policy of the people of
Michigan."

Thus, we believe that the two sections of the
1963 Constitution can be harmonized. We hold
that interns, residents and post-doctoral fellows
may be employees and have rights to organize
under the provisions of PERA without infringing
on the constitutional autonomy of the Board of
Regents. However, as the Court of Appeals pointed
out in *Regents of the University of Michigan v*

*Labor Mediation Board,* 18 Mich App 485, 490–491 (1969):

"While recognizing that the plaintiff is a public employer and the employees in question are public employees, we also recognize that this plaintiff, because of the provisions of Const 1963, art 8, § 5, is a unique public employer. Its powers, duties and responsibilities are derived from the constitution as distinguished from other public employers whose authority is derivative from enactments of the legislature."

Because of the unique nature of the University of Michigan, above referred to, the scope of bargaining by the Association may be limited if the subject matter falls clearly within the educational sphere. Some conditions of employment may not be subject to collective bargaining because those particular facets of employment would interfere with the autonomy of the Regents. For example, the Association clearly can bargain with the Regents on the salary that their members receive since it is not within the educational sphere. While normally employees can bargain to discontinue a certain aspect of a particular job, the Association does not have the same latitude as other public employees. For example, interns could not negotiate working in the pathology department because they found such work distasteful. If the administrators of medical schools felt that a certain number of hours devoted to pathology was necessary to the education of the intern, our Court would not interfere since this does fall within the autonomy of the Regents under Article 8, § 5. Numerous other issues may arise which fall between these two extremes and they will have to be decided on a case by case basis. Our Court will not, as it has not in the past, shirk its duty to protect the autonomy of the Regents in the educational

sphere. Thus, we hold that it does not violate Article 8, § 5 of the 1963 Constitution if the members of the Association are held to be public employees.

The Regents further contend that interns and residents are not employees as that term is used in the PERA. However, as we stated in the *Eastern Michigan* case, *supra,* (p 566) concerning the scope of the PERA:

" 'Public employment' is clearly intended to apply to employment or service in all governmental activity, whether carried on by the state or by townships, cities, counties, commissions, boards or other governmental instrumentalities. *It is the entire public sector of employment as distinguished from private employment.* The public policy of this state as to labor relations in public employment is for legislative determination." (Emphasis added.)

The only exception is for the classified civil service. No exception is made for people who have a dual status of students and employees. If the Legislature had intended to exclude students/employees from the operation of PERA, they could have written such an exception into the law. However, as noted above, the only exception is for the classified civil service. We thus hold that members of the Association are employees within the meaning of the PERA.

Finally, we must determine whether the findings by the Michigan Employment Relations Commission that members of the Association are employees is supported by competent, material and substantial evidence on the record. We hold that it is.

There is ample evidence to support the findings of the Commission that the members of the Association are employees. For example, they have a portion of their compensation withheld for the

purposes of federal income tax, state income tax, and social security coverage. As Judge McGregor pointed out in his dissent in the Court below, 38 Mich App 55, 67: Doctors are not eligible for the Internal Revenue Code § 117 exclusion of income for fellowships and education stipend. See *Woddail v Commissioner of Internal Revenue,* 321 F2d 721 (CA 10, 1963).

The interns, residents and post-doctoral fellows receive fringe benefits available only to regular University of Michigan employees through use of the identification cards which are issued to them by the University. This includes partial payment of Blue Cross-Blue Shield coverage, identical to coverage offered to other regular University employees. The University furnishes the W-2 forms required by the Internal Revenue Service for all employees. The compensation is paid by University checks drawn from a University account.

All interns and residents are required as a condition of employment to sign a loyalty oath required by Michigan law to be signed by all public employees. The interns and residents spend over three-quarters of their time providing patient care services for which the University is compensated. In particular, they are entrusted with many responsibilities that medical students are not. These include:

1. Writing of prescriptions without the required approval of a senior person.

2. Taking full charge and responsibility for the running of an outpatient clinic.

3. Admitting and discharging patients.

4. Performing operations and surgical techniques on actual patients under minimal or no supervision.

Moreover, Dr. John A. Gronvall testified that

the principal duty and responsibility of interns
and residents is to diagnose and prescribe a pa-
tient care program and put it into effect. We agree
with counsel for the Association that this is far
more indicative of an employee *(i.e.*—in this case a
doctor) than a student.

The Regents point out other evidence from the
record that would indicate that interns, residents
and post-doctoral fellows are students. All intern-
ship and residency programs at the University of
Michigan are fully approved by the Council of
Medical Education of the AMA. The stipend that
interns and residents receive is unlike a salary
because it has no relation to the number of hours
an individual works or the duties they perform.
All interns are not licensed to practice medicine.
The Regents also relied on the testimony given at
the hearing by several doctors which demonstrates
that the medical education is different from other
professions and graduate school educations. Medi-
cal education begins to include patient care re-
sponsibilities in the third year of medical school.
The type of patient care responsibility given to an
intern and resident is part of a continuing medical
education and not evidence that an intern or
resident is primarily an employee.

We do not regard these two categories as mutu-
ally exclusive. Interns, residents and post-doctoral
fellows are both students and employees. The fact
that they are continually acquiring new skills does
not detract from the findings of the MERC that
they may organize as employees under the provi-
sions of PERA. Members of all professions con-
tinue their learning throughout their careers. For
example, fledgling lawyers employed by a law firm
spend a great deal of time acquiring new skills, yet
no one would contend that they are not employees

of the law firm. The Regents contend vigorously that the MERC was incorrect in its findings that interns, residents and post-doctoral fellows are employees and contend that they are primarily students. However, since at this point we are dealing with a question of fact, under § 106(d) of the Administrative Procedures Act, we cannot, pursuant to said section, overturn the findings of the MERC unless they are not supported by competent, material, and substantial evidence on the record. We hold that the findings of the MERC that interns, residents and post-doctoral fellows are employees are supported by competent, material, and substantial evidence on the whole record.

The judgment of the Court of Appeals is reversed and the decision of the MERC is affirmed. No costs, a public question being involved.

T. M. KAVANAGH, C. J., and T. E. BRENNAN, T. G. KAVANAGH, WILLIAMS, LEVIN, and M. S. COLEMAN, JJ., concurred with SWAINSON, J.