*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HASSAN M. AHMAD,

        Plaintiff-Appellee,

UNPUBLISHED
February 12, 2026
10:53 AM

v

No. 374801
Court of Claims
LC No. 17-000170-MZ

UNIVERSITY OF MICHIGAN,

        Defendant-Appellant.

Before: GADOLA, C.J., and CAMERON and RICK, JJ.

PER CURIAM.

Defendant, the University of Michigan, appeals as of right the order and final judgment of the Court of Claims ordering the production of certain documents held by one of its libraries—the Bentley Library—to plaintiff and awarding plaintiff $1,000 in punitive damages under MCL 15.240(7). We vacate the portion of the trial court's order awarding punitive damages, but otherwise affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The factual background of this case was provided in an earlier appeal:

Dr. John Tanton—"an ophthalmologist and conservationist," according to the University, and "a figure widely regarded as the grandfather of the anti-immigration movements," according to plaintiff—donated his personal writings, correspondence, and research (collectively, "the Tanton papers") to the Bentley Library's collection. His donation included 25 boxes of papers, but boxes 15-25 were to remain closed for 25 years from the date of accession, i.e., until April 2035, purportedly in accordance with the terms of the gift.

Plaintiff filed a FOIA [Freedom of Information Act, MCL 15.231 *et seq*.,] request with the University, seeking all of the Tanton papers, including those found in boxes 15-25 and marked as "closed." The University eventually denied plaintiff's request, asserting that the Tanton papers were closed to research until April 2035 and were therefore not "public records" subject to FOIA disclosure

because they were not "utilized, possessed, or retained in the performance of any official University function."

Following plaintiff's unsuccessful administrative appeal, he filed suit in the Court of Claims. The Court of Claims granted the University's motion for summary disposition, concluding that the Tanton papers are not "public records." [*Ahmad v Univ of Mich*, unpublished per curiam opinion of the Court of Appeals, issued June 20, 2019 (Docket No. 341299), 1-2 (*Ahmad I*).]

Plaintiff appealed, and this Court reversed, holding that the Tanton papers were public records. *Id*. at 5-6. Defendant appealed this Court's decision to our Supreme Court, which affirmed this Court by equal division. *Ahmad v Univ of Mich*, 507 Mich 917 (2021) (*Ahmad II*).

On remand, defendant argued that all of the Tanton papers plaintiff sought were subject to (1) the personal privacy exemption of FOIA, (2) the Michigan Community Foundation Act (MCFA), MCL 123.901 *et seq*., and (3) the Library Privacy Act (LPA), MCL 397.601 *et seq*. It also argued that it was entitled to summary disposition because its "constitutional autonomy" precluded the Court of Claims from compelling disclosure of the Tanton papers. Plaintiff asserted that defendant failed to explain how the privacy exemption applied and that defendant was wrongfully withholding documents. The Court of Claims determined that it was bound by this Court's determination in *Ahmad I* that the Tanton papers were public records subject to FOIA. It reasoned that Dr. Tanton had waived any personal-privacy interest in the papers when he gifted them to defendant, and ordered defendant to produce the documents with sensitive information related to Tanton's "patients, friends, family, and correspondents" redacted. Relevant to this appeal, plaintiff also requested civil fines and punitive damages under MCL 15.240(7). The Court of Claims denied civil fines, but awarded plaintiff punitive damages. Defendant now appeals.

## II. STANDARDS OF REVIEW

"This Court reviews de novo whether the trial court properly interpreted and applied FOIA." *ESPN, Inc v Mich State Univ*, 311 Mich App 662, 664; 876 NW2d 593 (2015). "This Court also reviews de novo whether the trial court properly selected, interpreted, and applied the relevant statutes." *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). Factual determinations in a FOIA case are reviewed for clear error, and this Court "must defer to the trial court's view of the facts unless the appellate court is left with the definite and firm conviction that a mistake has been made by the trial court." *King v Mich State Police Dep't*, 303 Mich App 162, 174-175; 841 NW2d 914 (2013). Issues of constitutional interpretation are also reviewed de novo. *Mich Dep't of Transp v Tomkins*, 481 Mich 184, 190; 749 NW2d 716 (2008).

## III. PUBLIC RECORDS

Defendant first argues that the Tanton papers are not public records. Despite this Court's prior holding otherwise, defendant asserts this panel should "consider the issue anew" and conclude that the Tanton papers are not public records. We disagree.

"The law-of-the-case doctrine is a judicially created, self-imposed restraint designed to promote consistency throughout the life of a lawsuit." *Rott v Rott*, 508 Mich 274, 286; 972 NW2d 789 (2021). Under this doctrine, legal determinations "determined by the appellate court will not

be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Grievance Administrator v Lopatin*, 462 Mich 235, 259; 612 NW2d 120 (2000) (quotation marks and citation omitted). "Thus, as a general rule, an appellate court's determination of an issue in a case binds lower tribunals on remand and the appellate court in subsequent appeals." *Id*. at 260.

Defendant argues this Court should "exercise its discretion" and not apply the law-of-the-case doctrine in this appeal. In support of this contention, it cites to *Duncan v Michigan*, 300 Mich App 176, 189; 832 NW2d 761 (2013), for the proposition that the law-of-the-case doctrine "has been described as discretionary—as a general practice by the courts to avoid inconsistent judgments—as opposed to a limit on the power of the courts." While this is true, defendant gives short shrift to the sentence that immediately follows, which recognizes that "this Court's mandatory obligation to apply the doctrine when there has been no material change in the facts or intervening change in the law." *Id*. Indeed, "[e]ven if the prior decision was erroneous, that alone is insufficient to avoid application[.]" *Id*.

Defendant attempts to avoid this Court's "mandatory obligation[,]" *id*., to follow its prior decision by arguing that this case now presents with a "different procedural posture," which gives this court the benefit of a more complete record. Defendant summarily contends that "to the extent this Court's earlier ruling was in any way guided by factual assumptions about the uses to which the Bentley Library might put the Closed Tanton Papers in exercising its governmental functions, there are no longer such factual questions[,]" but provides no examples or argument as to what this Court's alleged "factual assumptions" were in the prior appeal, let alone how the more complete record debunks these alleged assumptions. An appellant may not "simply announce a position or assert an error in [its] brief and then leave it up to this Court to discover and rationalize the basis for the claims, or unravel and elaborate the appellant's arguments, and then search for authority to either sustain or reject the appellant's position." *DeGeorge v Warheit*, 276 Mich App 587, 594-595; 741 NW2d 384 (2007). Consequently, this issue is abandoned. *Id*. at 595. Similarly, defendant provides no argument or authority to support why its statement that "three of six Justices hearing the case believed this Court's determination was erroneous[,]" while the "other three Justices did not defend this Court's reasoning on the merits[,]" somehow excuses this Court from obeying the law-of-the-case doctrine. As such, this, too, is abandoned. *Id*.

Because there has been no material change in facts or law, this Court is bound by the law-of-the-case doctrine, *Duncan*, 300 Mich App at 189, and this Court's prior determination that the Tanton papers are public records is final. *Ahmad I*, unpub op at 5.

## IV. EXEMPTIONS

Defendant next argues that the personal-privacy exemption, as well as the MCFA and LPA, exempt the Tanton papers from disclosure. We disagree.

## A. PERSONAL PRIVACY

FOIA exemptions in MCL 15.243 are narrowly construed, and the party asserting the exemption bears the burden of proof. *Herald Co v Bay City*, 463 Mich 111, 119; 614 NW2d 873 (2000). The personal-privacy exemption, MCL 15.243(1)(a), exempts disclosure of

"[i]nformation of a personal nature if public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy." "Our Supreme Court has interpreted this exemption to encompass two elements: first, the information must be of a personal nature, and second, the disclosure of the information must constitute a clearly unwarranted invasion of an individual's privacy." *Larry S. Baker, PC v Westland*, 245 Mich App 90, 94; 627 NW2d 27 (2001).

Defendant's argument in support of this exemption focuses on Dr. Tanton's privacy interests. It alleges the Tanton papers are exempt from disclosure because they were Dr. Tanton's private documents, and his desire to keep them private is reflected in the condition he attached to his donation that the papers be kept "closed" until 2035. But our Supreme Court has held that deceased individuals do not have privacy rights against disclosure under FOIA. *Swickard v Wayne Co Med Examiner*, 438 Mich 536, 548-549; 475 NW2d 304 (1991). Dr. Tanton died in 2019, and, as a result, his privacy rights extinguished. Defendant does not allege that any living individuals have privacy interests that would be invaded by disclosure of the Tanton papers. Therefore, the privacy exemption is inapplicable.

## B. MCFA

As a preliminary matter, it is undisputed that the MCFA was enacted after defendant denied plaintiff's FOIA request. But we need not consider whether the MCFA is retroactive because its predecessor, MCL 397.381, as amended by 1998 PA 370, had substantively similar language. The MCFA provision at issue provides:

> A public library may receive and accept gifts and donations of real, personal, or intangible personal property, for the library, and shall hold, use, and apply the property received for the purposes, in accordance with the provisions, and subject to the conditions and limitations, if any, set forth in the instrument of gift. [MCL 123.905(3).]

MCL 397.381(1) contained the same relevant language, that the donation recipient "shall hold, use, and apply the property received for the purposes, in accordance with the provisions, and subject to the conditions and limitations, if any, set forth in the instrument of gift." Because the relevant language is the same in both statutes, and MCL 397.381 predates defendant's denial of plaintiff's FOIA request, a retroactivity analysis is unnecessary.

Defendant argues that the Tanton papers are exempt from disclosure under MCL 15.243(1)(d), which exempts "[r]ecords or information specifically described and exempted from disclosure by statute[,]" and the MCFA is such a statute. Defendant reads MCL 15.243(1)(d) too broadly.

> It is axiomatic that statutory language expresses legislative intent. A fundamental principle of statutory construction is that a clear and unambiguous statute leaves no room for judicial construction or interpretation. Where the statute unambiguously conveys the Legislature's intent, the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case. [*King v Mich State Police Dep't*, 303 Mich App 162, 175; 841 NW2d 914 (2013) (quotation marks and citation omitted).]

MCL 15.243(1)(d) unambiguously provides an exemption for records that are "exempted from disclosure" by other statutes. In other words, the statute itself must expressly proscribe disclosure for the exemption to apply. While the MCFA and its predecessor statute require that the recipient hold donations "in accordance with the provisions, and subject to the conditions and limitations, if any, set forth in the instrument of gift[,]" the prohibition on disclosure cited by defendant is one made by the donor, not the statute. Cf, e.g., *MLive Media Group v Grand Rapids*, 321 Mich App 263, 271-272; 909 NW2d 282 (2017) (involving statutes specifically forbidding disclosure of wiretapped or eavesdropped information); *King*, 303 Mich App at 176-178 (involving a statute forbidding disclosure of polygraph information). Dr. Tanton, not the MCFA or MCL 397.381, was the one who forbade disclosing the Tanton papers. Thus, the MCL 15.243(1)(d) exception is inapplicable.

## C. LPA

Defendant next argues that the LPA provides a second basis for exempting disclosure under MCL 15.243(1)(d). This argument fails for the same reason as the MCFA argument. Defendant relies on MCL 397.605, which states:

> (1) Except as otherwise provided by statute or by a regulation adopted by the governing body of the library, the selection of library materials for inclusion in a library's collection shall be determined only by an employee of the library.
>
> (2) Except as otherwise provided by law or by a regulation adopted by the governing body of the library, the use of library materials shall be determined only by an employee of the library."

These provisions do not expressly proscribe or exempt disclosure. Therefore, MCL 15.243(1)(d) is inapplicable.

## V. CONSTITUTIONAL AUTONOMY

Defendant next argues that disclosure of the Tanton papers violates its constitutional autonomy. We disagree.

Art 8 § 5[1] of the Michigan Constitution provides, in relevant part:

> The regents of the University of Michigan and their successors in office shall constitute a body corporate known as the Regents of the University of Michigan . . . . [The] board shall have general supervision of its institution and the control and direction of all expenditures from the institution's funds. [Const 1963, art 8, § 5.]

---

[1] In its brief, defendant cites art 3 § 5, but this appears to be a typographical error, as that article concerns intergovernmental agreements. Instead, Const 1963, art 8, § 5 concerns the controlling boards of public universities, including the University of Michigan.

This provision "limit[s] the Legislature's power[,]" because it "may not interfere with the management and control of universities." *Federated Publications, Inc v Bd of Trustees of Mich State Univ*, 460 Mich 75, 86-87; 594 NW2d 491 (1999) (quotation marks and citation omitted). "The constitution grants the governing boards authority over the absolute management of the University, and the exclusive control of all funds received for its use." *Id*. at 87 (quotation marks and citation omitted). That is, "[l]egislative regulation that clearly infringes on the university's educational or financial autonomy must . . . yield to the university's constitutional power." *Id*. But this does not mean "that universities are exempt from all regulation." *Id*.

The Legislature "can validly exercise its police power for the welfare of the people of this State," and a university "can lawfully be affected thereby." *Regents of Univ of Mich v Mich Employment Relations Comm*, 389 Mich 96, 108; 204 NW2d 218 (1973) (quotation marks and citation omitted). The university is supreme "[w]ithin the confines of the operation and allocation" of its funds, but "there is no reason to allow the Regents to use their independence to thwart the clearly established public policy of the people of Michigan." *Id*. (quotation marks and citation omitted).

We disagree with defendant's assertion that ordering disclosure here would infringe on its academic discretion "to enter into charitable gift agreements with restrictions." Applying FOIA and requiring disclosure has no impact on defendant's ability to receive charitable gifts with restrictions attached. The fact that a valid FOIA request can override a donor's restrictions has no impact on defendant's authority over its educational and financial decisions. *Federated Publications, Inc*, 460 Mich at 87. It may impact the authority of individual donors who place restrictions on their gifts, but it is *defendant's* constitutional autonomy, not that of individual donors, that is at issue here. Defendant's constitutional autonomy is not a shield against the requirements of FOIA simply because of a private decision made by an individual donor. Indeed, such an outcome directly contradicts Michigan public policy, see, e.g., MCL 15.231(2) (noting Michigan's public policy that citizens "are entitled to full and complete information regarding the affairs of government"), which cannot be thwarted by defendant's independence, *Regents of Univ of Mich*, 389 Mich at 108.

## VI. PUNITIVE DAMAGES

Finally, defendant argues that the Court of Claims erred in awarding punitive damages to plaintiff. We agree.

Underlying this issue is the Legislature's amendment of MCL 15.240. Before amendment, MCL 15.240(7) provided, in relevant part:

> If the circuit court determines in an action commenced under this section that the public body has arbitrarily and capriciously violated this act by refusal or delay in disclosing or providing copies of a public record, the court shall award, in addition to any actual or compensatory damages, punitive damages in the amount of $500.00 to the person seeking the right to inspect or receive a copy of a public record. [MCL 15.240(7), as amended by 1996 PA 553.]

But in 2014, the Legislature amended the statute, which now provides, in relevant part:

> If the court determines in an action commenced under this section that the public body has arbitrarily and capriciously violated this act by refusal or delay in disclosing or providing copies of a public record, the court shall order the public body to pay a civil fine of $1,000.00, which shall be deposited into the general fund of the state treasury. The court shall award, in addition to any actual or compensatory damages, punitive damages in the amount of $1,000.00 to the person seeking the right to inspect or receive a copy of a public record. [MCL 15.240(7).]

Plaintiff argues that the Legislature's decision to split the paragraph into sentences has the effect of "decoupling" punitive damages from the necessary showing of an arbitrary and capricious violation by the public body. Plaintiff further alleges that recent unpublished cases from this Court have erroneously relied on *Local Area Watch v Grand Rapids*, 262 Mich App 136; 683 NW2d 745 (2004), because *Local Area Watch* was decided before the 2014 amendment changes that are at issue here. Since the statute was amended, however, this Court has repeatedly rejected similar arguments by plaintiffs seeking punitive damages. See, e.g., *McIntosh v Rockford*, unpublished per curiam opinion of the Court of Appeals, issued June 20, 2019 (Docket Nos. 343125 and 344169); *Ostaszewski v Lansing*, unpublished per curiam opinion of the Court of Appeals, issued November 15, 2018 (Docket No.343537); *Petersen v Charter Twp of Shelby*, unpublished per curiam opinion of the Court of Appeals, issued November 15, 2016 (Docket No. 329545); *Katayama v Troy*, unpublished per curiam opinion of the Court of Appeals, issued December 10, 2015 (Docket No. 323459). While unpublished opinions are not precedentially binding under the rule of stare decisis, MCR 7.215(C)(1), these opinions demonstrate that this Court has continuously recognized that *Local Area Watch* remains binding even after MCL 15.240(7) was amended.[2] As such, "[t]he prerequisites to an award of punitive damages" are still "a court-ordered disclosure and a finding that the defendant acted arbitrarily and capriciously in refusing to provide the requested information." *Local Area Watch*, 262 Mich App at 153 (quotation marks and citation omitted). Because the Court of Claims declined to find that defendant acted arbitrarily and capriciously, and, as a result, denied civil fines, its award of punitive damages was erroneous.

The Court of Claims's award of $1,000 in punitive damages is vacated. We affirm in all other respects.

/s/ Thomas C. Cameron
/s/ Michelle M. Rick

---

[2] Indeed, in *MLive Media Group v Grand Rapids*, 321 Mich App 263, 275; 909 NW2d 282 (2017), this Court impliedly agreed that *Local Area Watch* was still binding when, after ruling in the plaintiff's favor, it ordered the trial court to "determine whether [the plaintiff was] entitled to punitive damages under MCL 15.240(7)." (Quotation marks and citation omitted). If the amendment truly "decoupled" punitive damages from the arbitrary-and-capricious requirement, this Court would have merely ordered the trial court to award punitive damages, because they would be mandatory in all respects.