317 A.2d. 875.

ANITA B. MALINOWSKI *et al.* *vs.* ANDRE H. ZALZAL, M. D.

APRIL 17, 1974.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This medical malpractice action was tried before a Superior Court jury. The jury returned a verdict for the defendant physician. The trial justice denied the plaintiff patient's motion for a new trial. She appeals.

Today, defendant practices medicine in nearby Massachusetts. He specializes in the allied fields of obstetrics and gynecology. However, in March 1968, he was chief resident[1] at the Providence Lying-In Hospital. On March 3, 1968, plaintiff was admitted to the hospital. A premature birth was in the offing. The next day, March 4, she gave birth to a daughter who weighed in at four pounds 15 ounces. The defendant, in delivering the infant, performed a surgical procedure known as a median episiotomy.[2]

---

[1] A resident is a physician serving a "residency." A residency is a period of advanced medical training and education following graduation from medical school and completion of an internship. It consists of a supervised practice of a specialty in a hospital and its out-patient department and instructions from the specialists on the hospital staff. *Regents of Univ. of Michigan* v. *Michigan Emp. Rel. Comm'n,* 38 Mich.App. 55, 195 N.W.2d 875 (1972).

[2] A median episiotomy is a midline incision made in the perineum just under the vagina to facilitate the delivery. The advantages of an episiotomy are prevention of perineal laceration, relief of compression of the fetal head, and shortening the second stage of labor. Such an incision can be repaired more successfully than a jagged tear. Benson, *Handbook of Obstetrics and Gynecology* (4th ed. 1971) at 140.

The hospital records disclose the following notations relative to plaintiff's postnatal condition:

| | |
|---|---|
| March 5 | Patient "doing well"—"ambulatory" |
| March 6 | "Appetite good" |
| March 7<br>8 a.m. | "Complains of pain in perineum" |
| March 7<br>11 a.m. | "Perineal pain decreased" |
| March 7<br>10 p.m. | "Speculum exam done; indication-foul smelling vag. discharge 1 Gauze sponge removed from vagina." |
| March 8 | Patient "feeling cheerful & healthy." |

The plaintiff was "discharged" from the Lying-In Hospital on March 9, 1968. She began this suit on March 10, 1970, more than two years after the sponge had been removed from her vagina. At trial she testified[3] that she was unaware of the sponge's presence until two weeks after she had left the hospital. However, in cross-examination she acknowledged that, in reply to a pretrial interrogatory, she had indicated that she was aware of the removal of the sponge during the time she was hospitalized.

At the trial, defendant[4] took full responsibility for his failure to remove the sponge once the delivery had been completed. The sponge is described as a gauze pad measuring 4″ x 4″ and having a thickness of 2 or 3 millimeters.

---

[3]The plaintiff has furnished us with a partial transcript. It is limited to the testimony of defendant. Our reference to plaintiff's testimony is taken from the trial justice's comments as he was considering a motion for a new trial.

[4]When plaintiff became pregnant, she took advantage of the services offered at Providence Lying-In Hospital's out-patient department. Originally, she and her husband sued Dr. Zalzal and the hospital. Their suit against the hospital was dismissed on the basis of G. L. 1956 (1969 Reenactment) §7-1-22. This statute immunized hospitals from the negligence of its agents. It was repealed by the enactment of P. L. 1968, ch. 43. The 1968 statute was prospective in its application applying only to incidents arising after October 1 of that year. The husband's action for consequential damages was dismissed because of his failure to prove damages.

The defendant expressed the belief that the presence of the sponge had no adverse affect on plaintiff's health. At most, he said, the sponge caused the vaginal seepage to become malodorous and once the sponge was removed, the odor vanished rapidly.

The sole objection before us is to the trial justice's denial of a new trial. In such circumstances we look at the evidence in the light of the charge given and then determine whether he has misconceived or overlooked material evidence on a material point, or whether he was clearly wrong, having in mind that the trial justice in making his independent appraisal of the witness's credibility acts as a thirteenth juror who can in certain instances come to a completely different conclusion from that reached by the jury. *Gordonv. Campanella Corp.*, 112 R. I. 417, 311 A.2d 844 (1973).

In his charge, the trial justice told the jury that plaintiff had the burden to prove defendant's negligence and that such negligence had injured her. If the jury found for plaintiff on both these issues, it was then told to consider whether the action could be maintained in the light of the fact that the litigation was commenced more than two years after the sponge's removal. In speaking on the statute of limitations, the trial justice pointed out that the burden of proof on this issue was upon defendant. He then followed the rule laid down in *Wilkinson* v. *Harrington,* 104 R. I. 224, 243 A.2d 745 (1968), where we said that the statute does not begin to run in a medical malpractice action until the plaintiff discovers or in the exercise of reasonable diligence should have discovered that she had been injured as a result of the defendant's negligence.

In denying plaintiff's motion for a new trial, the trial justice minced no words. He "wholeheartedly" approved the jury's verdict as it related to damages and described plaintiff as "an out-and-out liar" who "was laying it on

trying to get some money from the doctor clear and simple." He found defendant negligent but refused to buy plaintiff's tale of cramps, upset stomach and sleepless nights. Rather, he saw no difference in the presence of the sponge and the almost universal female use in this country of the sanitary napkin. In addition, the trial justice observed that he believed that plaintiff was well aware of the sponge and its relation to her alleged discomfort before she left the hospital on March 9, 1968.

The jury's verdict could have been based on several grounds—no damages, the bar of the statute or both. On appeal, the plaintiff bears the burden of proving to us that the trial justice erred when, in denying her motion for a new trial he affirmed the verdict. In the light of the absence of objection to the charge, the lack of any attempt to isolate the issues by way of a request for special findings or special interrogatories according to Super. R. Civ. P. 49, and the presentation of only a partial transcript, the most we will say is that the plaintiff has not even come close to meeting her burden.

The plaintiff's appeal is denied and dismissed.

Mr. Chief Justice Roberts did not participate.